No. 11,413.

## BROWN, EXECUTOR, ET AL. *v.* CRITCHELL ET AL.

PLEADING.—*Demurrer.*—*Legal Capacity to Sue.*—*Disabilities.*—The want of legal capacity to sue, allowed as a cause of demurrer by the second clause of section 339, R. S. 1881, has reference to plaintiffs under legal disabilities, and not to cases in which the facts alleged show that the plaintiff has no right to sue in a particular action.

SAME.—*Complaint.*—*Right of Action.*—To make a complaint good upon demurrer for the alleged want of sufficient facts, it must state a good cause of action in favor of the plaintiff, or, where there are several plaintiffs, in favor of all of them.

WILL.—*Construction.*—*Law of Case.*—*Amendment of Pleadings.*—Where, upon appeal to the Supreme Court, a construction is given to a will, it is the law of the case to the end of the controversy, and the questions determined will not be again considered on a second appeal because of immaterial amendments to the complaint.

DESCENTS.—*Partition and Distribution.*—*Law Governing.*—Both in the partition and distribution of the estate of a person who dies intestate, the law in force at the time of the death of such person will prevail.

SAME.—*Will.*—The property of a deceased person descends, or is otherwise disposed of, according to the law in force at the time of his death, except in so far as he may have made a different provision by his will.

SAME.—*Chose in Action.*—*Successorship.*—*Change by Legislation.*—The right of successorship to a chose in action is as much a subject-matter of legislation as is the manner in which any other property of a person dying intestate shall be transmitted.

SAME.—*Time of Taking Effect of Wills and Statutes of Descents.*—A will speaks from the day of the death of the testator, and statutes of descents and distribution from the time of their enactment.

SAME.—*Legacy.*—*Right of Action.*—*Survivorship.*—*Husband and Wife.*—*Statutes of 1843.*—A. executed a will in 1840, bequeathing all his property to his wife subject to a charge of $5,000, in favor of H., a niece, pay-

ment of which was to be made either during the lifetime of his wife or at her death, in her discretion. A. died in 1842, leaving the will so executed in full force. In 1844, H. intermarried with M. and died in 1850, leaving children and her husband surviving. The wife of the testator died testate in 1878, without having paid or made any provision for the payment of the bequest to H. M. died intestate in 1879, leaving a widow and children by a second marriage.

*Held*, that under the statutes of 1843, in force when H. died, her husband succeeded to the claim she held to the legacy, and that no right of action survived to her children.

From the Floyd Circuit Court.

*A. Dowling, T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks, A. Baker* and *E. Daniels*, for appellants.

*J. H. Stotsenburg, G. A. Bicknell, A. C. Harris, W. H. Calkins* and *F. H. Collier*, for appellees.

NIBLACK, J.—In the latter part of the year 1878, Mary Ayers Critchell, with her husband, Robert S. Critchell, and John W. Moody, filed the complaint in this cause as a claim against Jesse J. Brown and Silas C. Day, executors of the last will of Mary A. Lapsley, deceased, for the recovery of a legacy of five thousand dollars alleged to be due to the said Mary Ayers Critchell and John W. Moody, in right of their mother, Catharine S. Moody, deceased, under the provisions of the will of Elias Ayers, also deceased, who was the first husband of the said Mary A. Lapsley, and of whose will she was the executrix.

At the May term, 1879, of the court below, a demurrer was sustained to the complaint, and there was a final judgment upon demurrer in favor of the defendants. That judgment was afterwards reversed by this court, and the cause was remanded for further proceedings. *Critchell* v. *Brown*, 72 Ind. 539.

Briefly stated, the complaint, as it was originally filed, averred that Elias Ayers, on the 29th day of December, 1840, executed and published his last will, by which he devised and bequeathed to his wife, Mary A. Ayers, all his estate, both real

sand personal, of the probable value at that time of $50,000, subject to certain trusts and charges, one of which was the payment to his niece, Catharine Silliman Hillyer, of the sum of $5,000, which payment was to be made either during the life-time of his wife and future widow, in her discretion, or at the time of her death; that the said Elias Ayers died, on the 10th day of January, 1842, leaving his will so executed and published in full force; that said will was duly probated, and that the said Mary A. Ayers, afterwards Lapsley, qualified as the executrix and took upon herself the execution of said will; that the said Catharine S. Hillyer, on the 10th day of September, 1844, intermarried with one James C. Moody, and, on the 25th day of April, 1850, died intestate in the county of Floyd in this State, leaving the said Mary A. Critchell and John W. Moody, and an infant child who died a few months later, her only children surviving her; also leaving the said James C. Moody as her surviving husband; that the said Mary A. Lapsley, executrix as above stated, died at said county of Floyd on the 1st day of June, 1878, testate, with-out having ever paid the amount so bequeathed to the said Catharine S. Moody, or having made any provision for the payment of the same; that the said James C. Moody had, by a proper instrument in writing, assigned to the plaintiffs, Mary A. Critchell and John W. Moody, all his interest in the amount of money, so bequeathed to his late wife, which he had become entitled to receive as the surviving father of the infant child which had died as herein above stated. For further particulars as to the original complaint and as to the will of Elias Ayers, see the opinion in the case of *Critchell* v. *Brown, supra.*

After the cause was remanded to the court below, the complaint was amended by the insertion of the averments, that besides the plaintiff there was no executor, administra-tor, widower, or other person entitled to control or share in the *chose in action* herein sued upon, and that the said Cath-

arine S. Moody, at the time of her death, was not indebted to any person, or in any manner; also, that since the commencement of this suit, that is to say, on the 10th day of October, 1879, the said James C. Moody had died intestate, leaving a widow and children as the result of a second or subsequent marriage, who were also made defendants to answer as to any interest they might claim in the matters in controversy.

Brown and Day, as the representatives of the estate left by Mrs. Lapsley, demurred to the complaint as amended : *First.* Because the plaintiffs had no legal capacity to sue. *Second, Third* and *Fourth.* For alleged defects of parties, severally indicated. *Fifth.* For want of sufficient facts to constitute a cause of action. But their demurrer was overruled.

The widow of James C. Moody, and her children, having disclaimed any interest in this suit, no further notice was taken of them in the proceedings which ensued.

Brown and Day answered in denial, and the circuit court, after hearing the evidence, made a finding for the plaintiffs, and thereupon ordered and adjudged that the said Brown and Day should pay to the plaintiffs the sum of $5,000 as above demanded, with interest thereon, out of the estate in their hands left by Mrs. Lapsley, as well as the costs of suit.

Brown and Day, appealing to this court, first complain that the circuit court erred in overruling their demurrer to the amended complaint, upon the grounds : *First.* Conceding that there might be a right of action in some person to recover the alleged legacy of $5,000 in right of the deceased Mrs. Moody, the facts averred showed no right of action in that respect in the appellees, and hence they were, and still are, under a legal incapacity to sue in this action. *Second.* That the facts averred failed to show a cause of action either in favor of the appellees, or any one else, against the estate of Mrs. Lapsley, in right of Catharine S. Moody.

The want of legal capacity to sue referred to, and allowed as a cause of demurrer by the second clause of section 339,

R. S. 1881, has reference to plaintiffs under legal disabilities, and not to cases in which the facts alleged show that the plaintiff has no right to sue in a particular action.   *Gates* v. *Brattle,* 1 Root, 187.

It is a well settled rule of practice, that to make a complaint sufficient upon demurrer, it must present a good cause of action in favor of the plaintiff, or in favor of all the plaintiffs where there are more than one.   *Harris* v. *Harris,* 61 Ind. 117 ; *Hyatt* v. *Cochran,* 85 Ind. 231 ; *Holzman* v. *Hibben,* 100 Ind. 338.

The question, therefore, as to the proper parties to this action, sought to be raised by the demurrer to the complaint, was sufficiently presented by the fifth cause of demurrer.

As to whether Catharine S. Moody became lawfully entitled to receive, at some time, a legacy of $5,000 under the will of Elias Ayers, and, consequently, as to whether, if she had survived Mrs. Lapsley, she might have recovered the amount of such supposed legacy out of the estate in the hands of Brown and Day, exhaustive arguments have been submitted, and we are asked to reconsider that question, for the alleged reason that, as the complaint was amended after the cause was remanded, the construction given to the will of Elias Ayers, at the former hearing, is no longer obligatory as a precedent, and is, in consequence, not now the law of this case.

But as to so much of the original complaint as involved a construction of the will in question, there has been no material, if any, amendment, and, in that respect, the cause is again before us upon at least substantially the same facts as those contained in the original complaint.   Consequently, the construction we gave to the will of Elias Ayers at the former hearing continues to be, as it must to the end of this controversy, the law of this case.   *Dodge* v. *Gaylord,* 53 Ind. 365 ; *Gerber* v. *Friday,* 87 Ind. 366 ; *Case* v. *Johnson,* 91 Ind. 477 ; *Jones* v. *Castor,* 96 Ind. 307.

No question was, however, made at the former hearing as

to the right of the appellees to sue for and recover the legacy then held to have been left to Catharine S. Moody, and consequently nothing on that subject was either considered or decided at that hearing.

The question is now made that under certain provisions of the R. S. of 1843, which were in force when Catharine S. Moody died, James C. Moody, her surviving husband, became entitled, in virtue of his marital rights, to demand and to receive, for his own use, the proceeds of such legacy, to the exclusion of all other persons, and that, for that reason, no interest in the legacy descended to the children of Catharine S. Moody.

It may be of interest to note that by the common law, and the earlier statutes enacted in aid thereof, title to personal property was not acquired directly by descent, as under existing statutes of our State. The methods of obtaining title to such property, recognized by that system of jurisprudence, were: 1. By occupancy. 2. By prerogative. 3. By forfeiture. 4. By custom. 5. By succession. 6. By marriage. 7. By judgment. 8. By gift or grant. 9. By contract. 10. By bankruptcy. 11. By testament. 12. By administration. See 2 Blackstone Commentaries, Title " Personalty," p. 400.

Kent, in his Commentaries, in vol. 2, at marginal p. 135, states the common law rule of this country as regards *choses in action* belonging to a married woman, to be as follows: "As to debts due to the wife, at the time of her marriage or afterwards, by bond, note, or otherwise, and which are termed *choses in action*, they are not vested absolutely in the husband, but the husband has power to sue for and recover, or release or assign the same; and when recovered and reduced to possession, and not otherwise, it is evidence of a conversion of the same to his own use, and the money becomes, in most cases, absolutely his own. The rule is the same if a legacy or distributive share accrues to the wife during coverture. So, he has power to release and discharge the debts, and to change the securities, with the consent of the debtor.

But if he dies before he recovers the money or alters the security, or by some act reduces the *chose in action* into possession, the wife will be entitled to the debts in her own right, without administering on his estate, or holding the same as assets for his debts.  If his wife dies, and he survives her before he has reduced the *chose in action* to possession, it does not strictly survive to him ; but he is entitled to recover the same to his own use, by acting as her administrator.  By the statute of distributions of 22 and 23 Charles II., and the 25th section of the statute of 29 Charles II., C. 3, in explanation thereof, and which have in substance been re-enacted in New York and the other States of the Union, the husbands of *femmes covert*, who die intestate, have a right to administer upon their personal estate, and to recover and enjoy the same.  Under the statute, it is held, that the husband is entitled, for his own benefit, *jure mariti*, to administer, and to take all her chattels real, things in action, and every other species of personal property, whether reduced to possession, or contingent, or recoverable only by suit.  \* \* \* \* \* \*  It is also settled, that if the husband, who has survived his wife, dies before he has recovered the *choses in action,* his representatives are entitled to that species of property.  \* \* \* \* \* \* So, if, after the husband has administered in part on his wife's estate, and dies, and administration *de bonis non* of the wife should be obtained by a third person, or by the next of kin of the wife, he would be deemed a mere trustee for the representatives of the husband."

We have not inquired as to what the earliest statutes of this State prescribed on the general subject of the descent of property, but we find that the " act regulating descents, distribution and dower," approved February 17th, 1838, by its first section, provided " That the real and *personal* estate of any person dying intestate, shall, if he or she have a child or children living, descend, in equal proportions, to said children, and to the descendants of any of them who may be

deceased: the children of a deceased child inheriting the share of their deceased parent." R. S. 1838, p. 236.

In the case of *Coldron* v. *Rhode*, 7 Ind. 151, it was held that, under this statute, upon the death of an intestate, his personal as well as his real property descended to his heirs, and vested in them, in the absence of an administrator authorized to take charge of such property.

The Revised Statutes of 1843 adopted, nevertheless, a different policy concerning the distribution of the personal estates of intestates, and particularly as to the disposition of the personal estates of married women, and substantially re-enacted the American common law upon those subjects, as it is herein above stated by Chancellor Kent. By the fifth article of chapter 28 of this last named revision of the statutes, provision was made for the descent and the transmission of the title to the real estate of persons dying intestate. The fourteenth article of chaper 30 constituted a statute for the distribution of the personal estates of decedents, not disposed of by will, as contradistinguished from a statute of descents, and provided for the distribution of the *surplus* of such estates. The concluding section of that article was as follows:

"The preceding provisions respecting the distribution of estates, shall not apply to the personal estates of deceased married women; but their husbands may demand, recover, and enjoy the same as if the provisions of this article were not in force."

Sections 96 and 97, of chapter 30, of the same revision of the statutes, were in the following words:

"Sec. 96. A husband, as such, if otherwise competent according to law, shall be solely entitled to administration on the estate of his wife; but shall be liable, as administrator, for the debts of his wife, contracted before marriage, only to the extent of the assets received by him as administrator: If he shall not take out letters of administration on her estate in his hands, he shall be presumed to have assets in

his hands sufficient to satisfy her debts, and shall be liable therefor; and if he shall die, leaving any assets of his wife unadministered, they shall pass to his executors or administrators, as part of his personal estate, but shall be liable for her debts to her creditors, in preference to the creditors of the husband.

"Sec. 97. If letters of administration shall be granted on the estate of a married woman to any other person than her husband, by reason of his neglect, refusal, or incompetency to take the same, such administrator shall account for and pay over the assets and moneys remaining in his hands after the payment of debts and expenses of administration, to such husband or his personal representatives."

The "act regulating descents and the apportionment of estates," approved May 14th, 1852, 1 R. S. 1876, p. 408, re-established the rule for the descent and transmission of personal property, prescribed by the act of February 17th, 1838, by enacting, that "The real and *personal* property of any person dying intestate, shall descend to his or her children in equal proportions; and posthumous children shall inherit equally with those born before the death of the ancestor;" and that provision, together with an amended section, enacted in 1853, declaring that a married woman's personal property shall descend in the same manner as her real estate, is still in force. R. S. 1881, sections 2467, 2488.

Since the act of May 14th, 1852, went into effect, this court has frequently held that an heir may maintain an action upon a *chose in action* which belonged to his ancestor, where there is no executor, administrator, widow, creditor or other person entitled to control or to share in such *chose in action*. *Walpole* v. *Bishop*, 31 Ind. 156; *Bearss* v. *Montgomery*, 46 Ind. 544; *Schneider* v. *Piessner*, 54 Ind. 524; *Church* v. *Grand Rapids, etc., R. R. Co.*, 70 Ind. 161; *Begien* v. *Freeman*, 75 Ind. 398; *Cooper* v. *Cockrum*, 87 Ind. 443.

But we know of no case in which this court has held that an heir may maintain an action upon a *chose in action*, under

like circumstances, where the ancestor died while the Revised Statutes of 1843 were in force, and especially where the ancestor, thus dying, was a married woman, whose husband survived her.

Upon the facts stated in the complaint, our conclusion is, that James C. Moody, in virtue of his marital rights, succeeded to whatever claim Catharine S. Moody held to a legacy under the will of Elias Ayers at the time of her death, and that, consequently, no right of action upon such claim survived to the appellees.

The demurrer of the appellants to the amended complaint ought, therefore, to have been sustained.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrer which was filed to the complaint as amended.

HOWK, C. J., took no part in the decision of this cause.

Filed June 16, 1886.

## ON PETITION FOR A REHEARING.

NIBLACK, J.—As stated in the opinion promulgated at the former hearing, the statute of 1838, regulating descents, distribution and dower, and providing that the personal as well as the real estate of persons dying intestate should descend to their children, and to the descendants of such children, was in force when the will of Elias Ayers was executed, as well as at the time of the death of the said Ayers, and a rehearing is prayed upon the ground that this statute became in legal effect a part of the will, and that, in consequence, the alleged rights of the appellees under the will ought to be construed with reference to and in the light of such statute, instead of under the statutes of 1843, which were in force when Catharine S. Moody died.

But it is a well settled rule, both in the partition and distribution of the estates of persons dying intestate, that the law in force at the time of the death of the intestate person

must prevail. *Lynch* v. *Provisional Government of Paraguay,* L. R., 2 P. & D. 268; *Coldron* v. *Rhode,* 7 Ind. 151.

It is also a well accepted legal proposition, that all the property of a deceased person descends, or is otherwise disposed of, according to the law in force at the time of his death, except in so far as he may have made a different provision by his will.

As will be seen by a reference to the opinion announced when the case was first before this court (72 Ind. 539), the will of Elias Ayers did not annex any condition to, or place any restriction upon, the bequest made to Catharine S. Moody. The amount bequeathed to her was to become her absolute property, and constituted a *chose in action* which would have inured to her benefit if she had survived Mrs. Lapsley. The right of successorship to such *chose in action,* in the event that Mrs. Moody did not live to enforce it, therefore, became as much a subject-matter of ordinary legislation as is the manner in which any other property of a person dying intestate shall be transmitted.

The power of the Legislature in this respect is well illustrated by the successive enlargements of the interests which widows take, and have taken, in the estates of their deceased husbands within the past thirty-five years.

A will speaks from the day of the death of the testator, and statutes of descents and distribution from the time of their enactment. Consequently, the bequest to Mrs. Moody was transmitted according to the law in force at the time of her death. There was nothing in the nature of such bequest which took it out of the general rule in that respect.

The petition for a rehearing is overruled.

HOWK, J., was absent.

Filed April 27, 1887.