GRIFFIS ET AL. *v.* FIRST NATIONAL BANK OF CONNERSVILLE ET AL.

[No. 21,052. Filed May 28, 1907.]

1. DESCENT AND DISTRIBUTION.—*Statutes.*—Statutes ⁱ ₁ force at the time of the ancestor's death govern the rights of descent. p. 549.

2. SAME.—*Childless Second Wife.*—*Statutes.*—Un⸍er §2487 R. S. 1881, the childless, second wife, as against the descendants of

Griffis v. First Nat. Bank—168 Ind. 546.

her deceased husband, took a vested estate in fee, such descendants having no legal interest in such land until her death, when they took as her forced heirs. p. 549.

3. DESCENT AND DISTRIBUTION.—*Childless Second Wife.—Husband's Children by Former Marriage.—Rights.*—The husband's children by a former marriage, as against the childless second wife, cannot enjoin her from the commission of waste, and are not bound by a judgment ordering their interest sold, nor by their deed made during such widow's life. p. 549.

4. SAME. — *Childless Second Wife. — Husband's Descendants. — Failure of.—Power of Alienation.*—Upon the failure of the descendants of the husband, the childless, second wife, under §2487 R. S. 1881, had the complete power of alienation over her portion of her husband's real estate, and such part descended to her heirs, as in ordinary cases. p. 550.

5. SAME.—*Childless Second Wife.—Deeds.—Husband's Heirs.*—A quitclaim deed by a childless, second wife to the children of her deceased husband, by a former marriage, is valid as to all persons except such grantees and their descendants. p. 550.

6. MORTGAGES.—*Mortgagor Disputing Title.—Estoppel.*—At the common law, and under §3349 Burns 1901, §2930 R. S. 1881, a mortgagor executing a warranty mortgage, is estopped from disputing his mortgagee's title. p. 551.

7. SAME.—*Indemnifying.—Consideration.—Subrogation.*—An indemnifying mortgage executed at a later date than the mortgagee's suretyship contract, and without a new consideration, is valid; and if it contains a promise to pay the original debt, it creates a trust and an equitable lien in favor of the principal creditor. p. 552.

8. JUDGMENT. — *Jurisdiction. — Collateral Attack.*—Where attorneys appeared for heirs in a suit to sell lands for the payment of the ancestor's debts, and such heirs later moved to set aside the decree entered, on the ground that they were not parties thereto and that such attorneys were unauthorized to appear for them, and the court, after hearing the evidence thereon, overruled such motion, they cannot afterwards in a separate suit question the validity of such decree of sale. p. 553.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Suit by the First National Bank of Connersville and another against John G. Griffis and others. From a decree for plaintiffs, defendants appeal. Transferred from Appellate Court under §1337j Burns 1901, subdv. 2, Acts 1901, p. 565, §10. *Affirmed.*

*Forkner & Forkner,* for appellants.

*Florea & Broaddus,* for appellees.

HADLEY, C. J.—In May, 1890, Theodore L. Griffis died intestate as to his real property, leaving surviving him Kathleen, his childless second wife, and two sons, John and Robert, by a former marriage. In August, 1890, the widow executed to her stepsons her quitclaim deed to all her interest in the land inherited from her deceased husband. The decedent had been engaged in the mercantile business for many years, and after his death the stepsons, without administration upon the estate, continued the business until April 25, 1898, when they failed, and went through bankruptcy. Prior to the failure, to wit, in December, 1896, the stepsons executed a warranty mortgage, on the real estate conveyed to them by their stepmother, to Mary J. Catlin as security for a note, and to save her harmless as the surety of the mortgagors on notes for several thousand dollars, payable to the appellees. On the day of the failure of the stepsons, to wit, April 25, 1898, one Mount was appointed administrator of the estate of said Theodore L. Griffis, and, on his application to sell the real estate to pay the debts of the decedent, it was found that the widow's portion, being one-fourth as against creditor's, then owned by the stepsons, and by them mortgaged as aforesaid, could not be set off without damage to the whole, whereupon the whole estate was ordered sold and discharged of all liens, said liens to follow and attach to the proceeds in the hands of the administrator. Appellees were not parties to the land sale proceedings, and they bring this action to recover one-fourth of the proceeds in the hands of the administrator, basing their right of action on the doctrine of substitution, and subrogation under the Catlin mortgage. There was a special finding of facts and conclusions of law in favor of the appellees. The questions involved, though variously presented, arise appropriately upon exceptions to the conclusions of law.

Griffis *v.* First Nat. Bank—168 Ind. 546.

The real question for decision is: Can the stepsons, having received from their stepmother, who was the childless second wife of their deceased father, a general quitclaim conveyance of lands inherited from her said husband, and who executed thereon a warranty mortgage for full value, assert any right or interest in the land òr fund arising therefrom adversely to the mortgagees?

It is a familiar principle that the rights of heirs are determined by the statutes of descent in force at the time of the ancestor's death. The statute in force at the time of Theodore Griffis's death (1890) was as follows: "If a man marry a second or other subsequent wife, and has by her no children, but has children alive by a previous wife, the land which, at his death, descends to such wife, shall, at her death, descend to his children." §2487 R. S. 1881. This statute casts upon the childless wife a vested estate in fee, as against a descendant of her deceased husband who should be living at the time of her death. It was an estate in which the children of a former wife took no vested interest, and no right beyond a mere expectancy, determinable upon the death of the childless widow. During the life of the latter her expectant heir is so barren of interest in his stepmother's inheritance that he cannot maintain a suit to enjoin her from the commission of waste. *Gwaltney* v. *Gwaltney* (1889), 119 Ind. 144. She may also sell timber, gravel, or stone, or remove buildings from the premises, without interference from her· stepchildren, because they have no present interest in the estate, and will never have unless they survive the widow. *Johnson* v. *Johnson* (1899), 153 Ind. 60. In such cases stepchildren are not bound by a judgment ordering their supposed interest sold (*Erwin* v. *Garner* [1886], 108 Ind. 488), nor by a conveyance made by them or their guardian during the life of the widow (*Bryan* v. *Uland* [1885], 101 Ind. 477).

The rule suspending the power of alienation in the childless second wife applies only to the descendants of the husband by a former marriage, and is operative only during the lives of such descendants. Upon the failure of such descendants, the power of alienation becomes, in the childless second wife, absolute, and the estate will descend to her heirs, as in ordinary cases. As was said in *Johnson* v. *Johnson, supra:* This has been the settled law "under our statute of descents from May 6, 1853, when the same was in force, until the taking effect of the act of 1899 (Acts 1899, p. 131)." The latter act prescribes a different rule of descent in such cases, giving to the childless second wife a life estate only, with remainder in fee to the husband's descendants by a former marriage. Kathleen Griffis, the childless, second wife, is still living.

It follows, therefore, from what has been said, that John and Robert Griffis had no immediate interest in the land when they executed the mortgage to Mary J. Catlin in 1896, except such as was conveyed to them by their stepmother by quitclaim deed in August, 1890. The widow, however, could and did convey to them a good title as against her own heirs, and her deed to her stepsons was valid and absolute against everybody but her grantees and their descendants. So when these stepsons executed the Catlin mortgage they held a title that was defeasible only by themselves. They now contend that their mortgage to Catlin was for the most part invalid, and that the value of the life use of the widow's share of the fund in the hands of the administrator should be estimated by the court, and directed paid over to the beneficiaries of the mortgage, and the balance invested for whomsoever should be found entitled thereto upon the death of the widow; or the whole of the widow's share invested for the use of appellees during the life of the widow, and upon her death the principal be turned over to the ultimate heirs.

The contention leads to the inquiry: Are the appellants now in a situation to assert any interest or claim adverse to their own conveyance? Whether section two of the act of 1889 (Acts 1889, p. 430, §2645 Burns 1894) relates to warranty mortgages, or whether to prior or subsequent conveyances, as questioned by appellants, are questions not material to the disposition of this case (*Burget* v. *Merritt* [1900], 155 Ind. 143), for it is very clear that under the broader and less doubtful rule of the common law appellants have no interest in the fund in controversy that they can assert against the beneficiaries under the mortgage.

Section 3349 Burns 1901, §2930 R. S. 1881, provides that any mortgage of lands worded as follows: "A B mortgages and warrants to C D," etc., said mortgage being dated, signed, and acknowledged by the mortgagor, shall be deemed and held to be a good and sufficient mortgage to the mortgagee, with warranty from the mortgagor and his legal representatives of perfect title in the mortgagor. In the case at bar the mortgage executed by the appellants to Mary J. Catlin contained the statutory language which imports a warranty of perfect title in the mortgagor. It is an ancient rule of the common law that a mortgagor cannot dispute his mortgagee's title. The rule is well expressed by Collier, C. J., in *Stewart* v. *Anderson* (1846), 10 Ala. 504, 507, thus: "In accordance with this rule it has been held, that a mortgagor shall not be heard to allege that he had no estate in the premises. By the mortgage, he professed to convey, and thus declared that he had an interest coextensive with that he undertook to transfer, and he will not be heard to say, in contradiction of his own deed, or in opposition to a claim founded thereon, that he was guilty of a falsehood, and had no estate or interest therein." To the same effect see: *Pancoast* v. *Travelers Ins. Co.* (1881), 79 Ind. 172, and cases cited at page 176; *Thalls* v. *Smith* (1894), 139 Ind. 496, 498; 1 Jones, Mortgages (6th ed.),

§682; 2 Coote, Mortgages (4th ed.), 715; Wiltsie, Mortgages, §388; Bigelow, Estoppel (4th ed.), 487; 16 Cyc. Law and Proc., 686.

Appellants professed to mortgage to Mary J. Catlin a good and complete title, solemnly covenanting that they did, and their mouths will now be closed against saying that it was imperfect to the prejudice of their mortgagee, and those having a just claim founded on the mortgage. If appellants should not survive their stepmother, how the rule here applied would affect their descendants, if any, presents a question that does not arise in this case, since there is nothing in the record showing whether the appellants have, or are likely to have, such descendants.

We disagree with appellants in their claim that a mortgage given by a principal debtor to his surety for the latter's indemnity upon which the surety is already 7. liable, and no new consideration is paid, is not a security for the debt, and the creditor can have no interest therein, without the mortgagor's express promise to pay the debt which is without a new consideration. The general rule with respect to indemnity mortgages is that, where the instrument contains a promise to pay the obligations for which the mortgagee is liable as surety, the mortgage creates a trust, and an equitable lien for the full benefit of the principal creditor; "and it makes no difference," says Brandt (1 Brandt, Suretyship and Guaranty [3d ed.], §357) "that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence." *Plaut* v. *Storey* (1892), 131 Ind. 46; *Durham* v. *Craig* (1881), 79 Ind. 117, and cases cited on page 121. The mortgage before us contains the stipulation that "the mortgagors hereby agree to pay all sums of money above secured without relief." This brings the mortgage fully within the general rule and sustains the action of appellees. 4 Pomeroy, Eq. Jurisp., §1419.

State, *ex rel.*, *v.* Lung—168 Ind. 553.

The invalidity of the proceeding in which said real estate was ordered sold and in pursuance of which it was sold is asserted upon the ground that the court acting therein had no jurisdiction of the persons of said Robert and John Griffis. It appears from the record of said cause that said parties were present by attorney and filed answers therein. They thereafter moved for a vacation of the judgment and for permission to defend, for the alleged reason that they had not authorized such attorneys to appear for them. Said motion was submitted for hearing upon evidence introduced, and was denied. Such adjudication is conclusive upon the question in this proceeding. *Harrah* v. *State, ex rel.* (1906), 38 Ind. App. 495.

The conclusions of the court upon the facts were correct, and the judgment is therefore affirmed.