SCOTT *v*. SCOTT, ADMINISTRATRIX ET AL.

[No. 29,512. Filed June 4, 1958. Rehearing denied September 24, 1958.]

*George W. Rauch* and *Batton, Harker, Kiley & Osborn,* all of Marion, for appellant.

*John H. Edris,* of Bluffton, *John O. Campbell* and *Campbell, Gemmill, Browne, Ewer & Torrance,* all of Marion, for appellee.

LANDIS, J.—The administratrix of the estate of Glenn A. Scott, who died intestate, filed petition to determine heirship as between a second childless wife of

decedent and his natural son by a former marriage who was thereafter adopted by his paternal grandparents.

The question on this appeal is whether the natural child of an intestate who is adopted by others during his minority and before the enactment of the Probate Code of 1953[1] is precluded from inheriting[2] from such intestate's estate when such intestate died after the effective date of the New Probate Code providing, *inter alia,* "such child . . . shall cease to be treated as the child of his natural parents . . . for the purposes of intestate succession . . . ." Under the prior law it has been held the act of adoption did not destroy the legal capacity to inherit from natural parents.[3]

The lower court in the instant proceedings adjudged decedent's widow to be the sole and only heir of decedent and that the son was not entitled to any part of decedent's estate. The son has appealed to this court.

Appellant's first contention on this appeal is that the Probate Code of 1953 is not applicable to this case as

1. Acts of 1953, ch. 112, p. 295, being Burns' §6-101, et seq., 1953 Replacement.

2. Section 208 of the Probate Code of 1953 (Burns' §6-208, 1953 Replacement) provides:

"(a) For the purpose of inheritance to, through and from a child legally *adopted during his minority, such child shall be treated the same as if he were the natural child of his adopting parents, and he shall cease to be treated as the child of his natural parents* and of any previous adopting parents *for purposes of intestate succession:* Provided, that if a natural or any previous adopting parent shall have married the adopting parent, the adopted person shall also be considered the child of such natural or previous adopting parent.

"(b) For the purpose of inheritance to, through and from a child legally adopted when an adult, such child shall be treated as the child of his natural parents for purposes of intestate succession except that he shall in addition be entitled to inherit as a child from the adopting parent or parents." (Emphasis supplied.) (Acts 1953, ch. 112, §208, p. 295.)

3. See: *Head* v. *Leak* (1916), 61 Ind. App. 253, 111 N. E. 952; Acts of 1941, ch. 146, §7, p. 438, being Burns' §3-121, 1946 Replacement.

the legislature did not intend §208 thereof to apply to adoptions already consummated, but only to adoptions decreed after the effective date of the act.

It is a well settled rule in Indiana that the rights of heirs are determined by the statutes of descent in force at the time of the intestate's death. See: *Griffis* v. *First Nat. Bank* (1907), 168 Ind. 546, 81 N. E. 490; *Brown, Executor et al.* v. *Critchell et al.* (1887), 110 Ind. 31, 7 N. E. 888, 11 N. E. 486.

Appellant admits this may be true but says the legislature did not intend to change the law of descent and distribution as to adopted children who were already adopted. Appellant has pointed to no ambiguity in the statute, but the language of the section is plain and understandable. Furthermore, appellant has offered no evidence that the legislative intent was what he contends it to have been.

Appellant says that while the legislature may have had sufficient reason for desiring to change the right of inheritance of minor children adopted under present-day law in order to solidify decrees of adoption and to minimize the adopted child ascertaining his natural parentage, that these reasons do not apply to the case of appellant who, although a minor when adopted, allegedly always knew of his adoption and was some forty-six years old when his natural father died intestate.

Whether appellant "always knew of his adoption," as he contends in his brief, we do not believe material, but we do note from the record that appellant was two years and fifty-one days old at the time of his adoption, and it does not appear to us very likely that at that tender age he knew of his adoption. Appellant's observation that in this case appellant happened to be forty-six years of age when his natural father died

some forty-four years after his adoption by his grand-parents at the age of two, can certainly have no bearing upon the policy behind the statutes governing the adoption of minors.

Appellant concedes adoption statutes should be construed to carry out the beneficent purposes of the adoption institution and to protect the adopted child, but says that courts should be reluctant to construe a statute so as to cut off an adopted child's interest of inheritance from his natural parents. Appellant in his argument overlooks the fact that while the statute does lessen his opportunity of inheritance in one respect, it increases his likelihood of inheritance in another respect. For the same statute provides for his inheriting directly from the collateral relatives of the adopting parents.

It is not our function as a court to consider which interest is greater or whether such a change is desirable, as that is a matter of policy for the legislature to determine, and with which within constitutional bounds we are not at liberty to interfere.

Appellant has cited §7, ch. 146, p. 438, of the Acts of 1941 (Burns' §3-121, 1946 Replacement) as authority that an adopted child should continue to inherit from his natural parents, such statute providing in this respect:

> ". . . Nothing in this act [§§3-115—3-125] shall be construed to prevent a legally adopted person from inheriting property from his or her natural parent or other kind."

This statute of course was not in force at the time of appellant's adoption in 1909, and appellant would ask that the 1941 statute be made thirty-one years retroactive to govern his inheritance from his natural

parents although he insists the later Probate Code of 1953 cannot have retroactive application to affect the same inheritance. However, in any event, if these two statutes are repugnant and irreconcilably in conflict as apparently contended by appellant, the later expression of the legislature controls and repeals the former act to the extent of the repugnancy. The 1941 Act is therefore not availing to appellant's position.

Appellant has cited cases from other jurisdictions in support of his contention that the adopted child should be permitted to inherit from his natural parents, but these cases are not particularly helpful when examined in the light of the particular statutes involved and the facts therein appearing.

Appellant's next contention is that appellant at the date of birth acquired an "accrued right" within the meaning of Burns' §6-102 (Acts 1953, ch. 112, §102, p. 295), which provides that ". . . no accrued right, shall be impaired by its [the Probate Code of 1953] provisions."

The appellant at the time of his birth did not have a *vested* right in the estate of the natural parent who was then living, as it is well established under the common law and statutory law of this state that although children may become heirs on the death of their parent, they do not have a vested interest as such children in the property of the parent during the parent's lifetime, but may be disinherited. See: *Nesbitt* v. *Trindle et al.* (1878), 64 Ind. 183, 187.

Appellant concedes in his brief the words "accrued" and "vested" are sometimes used in the same sense, but here attempts to distinguish them. Appellant cites. the case of *In re Klapp's Estate* (1917), 197 Mich. 615, 164 N. W. 381, 382, L. R. A. 1918A 818, as supporting his contention that the law "irrevocably fixes . . . [the

natural child's] status in that respect the moment he is born." However, that case was based upon a Michigan statute providing that all issue shall inherit the property of their parents, and it is therefore inapplicable to the case before us.

We are unable to see how appellant had either a vested or accrued interest in the estate of his natural father at the time of appellant's birth as he had only an expectancy therein which was dependent on the law in force at the time of such father's death. See: *Brown, Executor et al.* v. *Critchell et al.* (1887), *supra,* 110 Ind. 31, 41, 11 N. E. 486, in which the rule is stated as follows:

"... all the property of a deceased person descends, or is otherwise disposed of, according to the law in force at the time of his death, ..."

And see: *Morin* v. *Holliday* (1906), 39 Ind. App. 201, 208, 77 N. E. 861, 862, in which it is stated:

"... upon the death of an ancestor an 'heir,' ... is always appointed by law. The title is called into existence by the death of an ancestor, and its rights are governed by the law in force at the time of such death. ... It being within the province of the legislature to determine the rules of inheritance ... it [the legislature] may provide, ... as to who shall be heirs. ..."

Appellant next contends that §208 of the Probate Code, *supra,* as construed by the trial court is unconstitutional in that it discriminates between different classes of adoptees in an unreasonable and arbitrary manner.

It is true appellant has not cited the particular constitutional provisions he contends are violated by such statute, although he does state the statute "discriminates between different classes of adoptees in an unreasonable manner." However, any

technical omissions by appellant in this respect we feel are waived by appellee by his failure to point them out, and by the statement of appellee in his brief setting forth the specific constitutional provision relied on by appellant as follows, to-wit:

> "Appellant takes the position that Article 1, Section 23 of the Constitution of the State of Indiana is violated. This section reads as follows:
> " 'The General Assembly shall not grant to any citizen or class of citizens privileges or immunities, which, upon the same terms shall not equally belong to all citizens.' " (Appellee's brief, pp. 35 and 36.)

Appellant cites no authorities in support of his contention that the statute is unconstitutional for arbitrarily discriminating between different classes of adoptees except the cases of *Hanley* v. *State Dept. of Conservation et al.* (1955), 234 Ind. 326, 123 N. E. 2d 452, 126 N. E. 2d 879, and *McErlain, Tr.* v. *Taylor* (1934), 207 Ind. 240, 192 N. E. 260, 94 A. L. R. 1284, which involved the veterans' fishing license law and the manual and mechanical laborers' preference law. We of course have no quarrel with the general principles of law stated in such cases, and in the Hanley Case we should note it is stated (pp. 331, 332 of 234 Ind., pp. 453, 454 of 123 N. E. 2d):

> "In determining the constitutionality of the statute involved, we will indulge all reasonable presumptions in its favor. *State ex rel. Harrison* v. *Menaugh et al.* (1898), 151 Ind. 260, 266, 51 N. E. 117 and 357, [43 L. R. A. 408, 418]; *Townsend* v. *State* (1897), 147 Ind. 624, 47 N. E. 19, [37 L. R. A. 294]; *Kirtley* v. *State* (1949), 227 Ind. 175, 179, 84 N. E. 2d 712.
> "Therefore, the burden is upon the attacker . . . to overcome the presumption noted. *Weisenberger* v. *State* (1931), 202 Ind. 424, 431, 175 N. E. 238."

Appellant, however, complains of discrimination in that the act prohibits adopted minors from inheriting from natural parents, but allows adopted adults still to inherit. However, the adoption of a minor is so different from the adoption of an adult as to form the basis of a valid classification. The minor placed for adoption is seeking the love, comfort and security of a home, and whether the child is old enough to comprehend such a want or need, the state, through its powers of protecting such children, can recognize and give voice to it. In the case of the adopted adult, the need for a home and parents is of minor consideration. The adult is fully able to assert his own best interest, and no plausible reason requires that he turn his back on the person who has supplied the parental care during his minority. The adopted adult does not need safeguards to insure emotional security which properly in the interest of the general welfare should surround the child. And the law for a number of years has recognized this difference, since for example, before a minor can be adopted, an investigation of the home must be conducted by a duly licensed child placement agency, and a supervisory period must expire, whereas no such mandatory requirement is applicable to the adoption of adults.[4]

---

4. See: Burns' §§3-117, 3-118, 3-124 (1946 Replacement), being Acts 1941, ch. 146, §3, p. 438, 1943, ch. 40, §2, p. 89; Acts 1941, ch. 146, §4, p. 438, 1943, ch. 40, §3, p. 89; Acts 1941, ch. 146, §10, p. 438.

It should also be noted that classifications in other respects have been made between minors and adults, as for example, in legislation providing sentences for minors which may be different from those imposed on adults for the same offense.

See: Burns' §9-1815, being Acts of 1941, ch. 148, §10, p. 447; 18 U. S. C. A. 5005-5020, being 64 Stat. 1085. And legislation of such a nature has been held to be a valid and reasonable classification and not in violation of the equal protection clause of the United States Constitution. *State* v. *Meyer* (1949), 228 Minn. 286, 37 N. W. 2d 3, 14. See also: *In re Herrera* (1943), 23 Cal. 2d 206, 143 P. 2d 345, 348.

It has been urged that the failure of the intestate laws to make provision for adopted children to inherit from their natural parents will not break the ties with the natural parent, since the natural parent can still leave property to the child by will. However, this is no argument at all, for *a stranger* can also leave property to a child by will, but who would suggest the interest of strangers to adoptions was a threat to the adoption institution?

If inequities are to be sought for in the treatment given intestates by the legislature, the interest of a second childless spouse could be contrasted with that of a first childless spouse or a second spouse with children. Also, a second childless wife's interest could be contrasted with that of a second childless husband (prior to the Probate Code of 1953), to name a few of the possibilities. These are all matters of legislative discretion, and it is not the province of this court to act as a super-legislature and re-enact the laws of descent as we would like them to be. We believe the foregoing section of the adoption statute under attack is a valid classification and is fair and reasonable when considered in the light of the purpose of the adoption of minors, which is to bring the adopted child a happy and contented home life with the love and security necessarily a part of it, rather than to hazard its interruption upon the forlorn chance that the adopted child might someday inherit something from a natural parent, who for one reason or another has not seen fit to continue his parental relationships to his child. Furthermore, we should respect the legislature's wisdom in matters of this kind and not encroach upon its function in determining within proper limits what is good or bad for the social life of the state.

Appellant also complains of discrimination between

adopted minors whose natural parents die before the effective date of the Probate Code of 1953, *supra*, ▮ and adopted minors whose natural parents die thereafter. However, as previously discussed in this opinion, the law has long been well settled in this state that the law applicable at the date of death of the ancestor determines the devolution of his intestate property, and we do not believe any valid contention can be made that the legislation being attacked is an unlawful discrimination in this respect. Otherwise, the legislature would be powerless to change the rules of descent to the disadvantage of an expectant heir.[5]

As to appellant's last contention that the lower court's construction of the statute constitutes an unconstitutional impairment of the obligation of contract, it might be seriously questioned whether this question has properly been raised.

However, appellant concedes he introduced no evidence of a contract in the lower court, and he ▮ cites no authority that the adoption proceedings and decree constitute a contract.

The interest of an adopted child in his natural parent's estate even before the adoption of the Probate Code of 1953 was no stronger than that of a natural child in his natural parent's estate. As previously treated, all interests of heirship are governed by the laws in force at the ancestor's death, and who the heir shall be rests in the discretion of the legislature. Appellant had no contract right upon his adoption adjudg-

5. Other examples of changes in the rules of descent in the Probate Code of 1953 appear in §201 thereof (Burns' §6-201, 1953 Replacement, being Acts 1953, ch. 112, §201, p. 295) reducing the share of the surviving child from two-thirds to one-half, and increasing that of husband from one-third to one-half where wife dies leaving husband and one child. Also, such section changes the rules of inheritance in some situations where decedent leaves parent or parents and brothers or sisters as survivors.

ing that he was to receive a stipulated share of his natural father's estate. His natural father could have left him property by will, by gift, or in any other legal method; but the statutes of descent were subject to such modification as the legislature in its wisdom deemed proper, and appellant not being entitled to inherit under the laws in force at the time of the intestate's death, has no interest as an heir in such estate.

No error having been demonstrated, the judgment is affirmed.

Bobbitt, C. J., and Achor and Arterburn, JJ., concur.

Emmert, J., dissents with opinion.

### DISSENTING OPINION

EMMERT, J.—The appellant did not specify any provision of the Constitution of Indiana or the Federal Constitution in the trial court that was contravened by the statute, nor are his briefs on appeal any more specific. I think the precedents of this court correctly decide the general rule that a party must charge the particular constitutional provision that has been violated, both in the trial court and on appeal, or he waives the issue.

"When a provision of a constitution is asserted to be violated it should be pointed out with such certainty that the trial court and this court have no difficulty in determining what part of the constitution is violated by it. [Citing cases.]" *Prunk* v. *Indianapolis Redevelopment Comm.* (1950), 228 Ind. 579, 586, 93 N. E. 2d 171.

"The rule is well settled in this state that he who challenges the validity of a statute on constitutional grounds must point to the constitutional provision inhibiting such legislative action." *Luttrell* v. *State* (1932), 204 Ind. 116, 121, 183 N. E. 318.

"If, by the reference to local self-government, appellant intended to assail the act because of its

conflict with some other constitutional provision, express or implied, he has failed to point it out in the brief, and we are not warranted in making an independent search of constitutional provisions to discover a cause for holding invalid a legislative act in order to reverse a judgment. As against any constitutional objection urged, the act is valid." *Haun* v. *State ex rel. Bd. of Comm. of Co. of Carroll* (1915), 183 Ind. 153, 155, 108 N. E. 519.

"The first objection, viz., that the act is not a constitutional exercise of legislative authority, is too vague and indefinite to raise any question. The particular provision of the Constitution supposed to be violated should be pointed out." *Levy* v. *State* (1903), 161 Ind. 251, 256, 68 N. E. 172.

See also *Jones* v. *Stawicki* (1953), 233 Ind. 273, 111 N. E. 2d 718.

This is not a case where we construe a statute by avoiding a construction that might make it unconstitutional, or where public rights are involved so that there is an exception to the general rule that a constitutional issue must be duly presented to the trial court and on appeal. Even where grave public rights are concerned, a majority of this court refused to consider a constitutional question because not properly asserted in *State ex rel. Savery, etc.* v. *Marion Criminal Court* (1955), 234 Ind. 632, 637, 130 N. E. 2d 128, wherein the court held, "A constitutional question will not be decided, where the cause can be properly disposed of otherwise."

But since the statute on inheritance by adopted children is being held constitutional, it becomes necessary to test the act under the Equal Protection Clause of the Fourteenth Amendment and §23 of Article I of the Constitution of Indiana.[1]

1. "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Art. I, §23, Indiana Constitution.

Section 208 of the Probate Code of 1953 provides for unequal inheritance, depending on the adopted child being under or over 21 years of age.

"(a) For the purpose of inheritance to, through and from a child legally adopted during his minority, such child shall be treated the same as if he were the natural child of his adopting parents, and he shall cease to be treated as the child of his natural parents and of any previous adopting parents for purposes of intestate succession: Provided, that if a natural or any previous adopting parent shall have married the adopting parent, the adopted person shall also be considered the child of such natural or previous adopting parent.

"(b) For the purpose of inheritance to, through and from a child legally adopted when an adult, such child shall be treated as the child of his natural parents for purposes of intestate succession except that he shall in addition be entitled to inherit as a child from the adopting parent or parents." Section 6-208 (a) and (b), Burns' 1953 Replacement.

Neither the Fourteenth Amendment nor §23 of Article I of the Constitution of Indiana prohibit reasonable classification. This court well laid down the standards for determining what is reasonable in *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 101, 102, 103, 155 N. E. 465, as follows:

"The law requires something more than a mere designation of characteristics which will serve to divide into groups. Arbitrary selection or mere identification cannot be justified by calling it classification. [Citing cases.] The characteristics which can serve as a basis of a valid classification must be such as to show an inherent difference in situation and subject-matter of the subjects placed in different classes which peculiarly requires and necessitates different or exclusive legislation with respect to them. [Citing cases.]

"A proper classification must embrace all who naturally belong to the class—all who possess a

common disability, attribute or qualification and there must be some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched. *Chicago, etc. R. Co.* v. *Westby* (1910), 178 Fed. 619, 47 L. R. A. (N. S.) 97; *Selvage* v. *Talbott, supra; Hirth-Krause Co.* v. *Cohen, supra; Kraus* v. *Lehman* (1908), 170 Ind. 408, 83 N. E. 714, 84 N. E. 769; *Barrett* v. *Indiana* (1913), 229 U. S. 26, 57 L. Ed. 1050; *Seaboard Air Line* v. *Seegers* (1907), 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108; *Maercker* v. *Milwaukee, etc. R. Co., supra.* The legislature cannot take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered factions of the original unit as two classes, and thereupon enact different rules for the government of each. *State* v. *Julow* (1895), 129 Mo. 163, 31 S. W. 781, 50 Am. St. 443, 129 L. R. A. 257; *State* v. *Miksicek* (1910), 225 Mo. 561, 125 S. W. 507, 135 Am. St. 597."

A reasonable classification embraces more than one which has a reason for the law. The English law of primogeniture, whereby the oldest son inherited all the father's land, had a reason behind it.[2] Reasonableness must be fair, just, conscionable, and grant equality within the classification unless there be strong and compelling causes for discrimination within the class.

2. "Benefits therefrom. But when the sovereigns began to create honorary feuds, or titles of nobility, it was found necessary to make them impartible, *feuda individua,* and in consequence descendible to the eldest son alone. To this was added the inconvenience of splitting estates, *viz.,* the division of military services, the multitude of infant tenants incapable of performing any duty, the consequent weakening of the strength of the kingdom, and the inducing younger sons to adopt an idle life in the country, instead of engaging in mercantile, military, civil or ecclesiastical duties." Blackstone, Commentaries (Gavit's Ed.) pp. 353, 354.

"At common law the male issue inherits before the female, and, when there are two or more males of equal degree, the elder alone inherits, while females inherit all together." 4 Tiffany, Real Property (3rd Ed.), §1116, p. 376.

See also *Rountree, Administratrix* v. *Pursell* (1895), 11 Ind. App. 522, 536, 39 N. E. 747.

Equality in descent became the American policy for intestate descent. "After the separation of the American colonies from the mother country another system was introduced. It was equality before the law. Primogeniture was abolished. The elder son was no better than his brothers and males no better than females. It is this principle of equality that lies at the foundation of our civil institutions." *Rountree, Administratrix* v. *Pursell* (1895), 11 Ind. App. 522, 536, 39 N. E. 747.

An intestate act which classifies children by reason of race, creed or color would be a denial of equal protection. If an act provided children should inherit equally, but if any be female, she should inherit one-half the estate she would inherit if a male, it would be void. Nor has the law of this state ever said that children should inherit equally, but if any be under 21 years of age, he or she should inherit one-half the estate he or she would inherit if 21 years of age. The age of a child has nothing to do with what the intestate laws should provide to be fair, just and equitable. An attempt to discriminate between children for descent by reason of their ages is arbitrary, capricious, and not based on any reasonable cause.

A competent testator by will may discriminate between his children, but when the law makes a will for him by intestate descent, the statute must give equality between the children. Nor is the situation changed when the law makes an individual a child of another by adoption. I fail to see how comfort, security, love and affection in the adopting home have anything to do with cutting down the estate he may inherit. In fact, a minor child needs more money than an adult for his education, training, and start in life. The law provides

for a guardian to care for his property until he reaches 21 years.

On oral argument it was suggested that this unequal treatment might discourage the child from trying to find his natural parent or paying any attention to him. This argument overlooks the fact there is nothing to prevent the natural parent from making a will and his natural child his beneficiary.

Under the present adoption statute, the same person could adopt two children of the same natural parent. If one be under 21 years when adopted, he would not inherit from his natural parent, while the other, if over 21 years when adopted, could inherit from both parents. If this be equal justice under law, I am unable to discover it. I never understood inequality between children under the law of descent was a modern concept; the history of the law is otherwise. If this statute be constitutional, then a primogeniture statute for adopted children by which the oldest son would inherit to the exclusion of all other of his adopted brothers and sisters would also be constitutional.

Section 6-2315, Burns' 1933 [Acts 1899, ch. 99, §2, p. 131; 1901, ch. 240, §1, p. 554],[3] which cut down the interest in real estate inherited by a second or subsequent childless wife where children by a previous wife survive, furnishes no analogy for declaring valid the unjust discrimination in the present inheritance statute for adopted children. It is to be noted that §6-2315,

---

3. "If a man die intestate, leaving surviving a second or other subsequent wife, without children by him, but leaving a child or children or their descendants alive by a previous wife, such surviving childless second or other subsequent wife shall take only a life estate in one-third of the lands of her deceased husband, and the fee thereof shall, at the death of such husband, vest at once in such child or children, or the descendants of such as may be dead, subject only to the life estate of such widow." Section 6-2315, Burns' 1933.

Burns' 1933, applied only to real estate. It was a most common occurrence for a valuable farm to be acquired by the joint effort of the husband, his first wife, and their children. Also, the statute encouraged a second or subsequent wife to have children, which has always been proper for the legislature to encourage. The fact that the husband would not have his interest in the wife's real estate diminished if there were no children by the second marriage was no arbitrary discrimination. It was his duty to furnish a home and necessary food, clothing, shelter and medical attention according to his status in life, while there was no such duty upon the wife. The present statute, §6-201(b), Burns' 1953 Replacement [Acts 1953, ch. 112, §201, p. 295], now gives both the husband and the second childless wife the same interest in the real estate of a survivor. This is equality in classification, to which no constitutional objection could be made, and it still gives legislative encouragement to both to have children. If either statute had attempted to discriminate between the children of the decedent according to their ages at the time of the decedent's death, or according to whether they were children by a first marriage or by a second marriage of the intestate, the situation would be more analogous, but it would still be impossible to justify such classification on any reasonable basis.

Section 6-208, Burns' 1953 Replacement, classifies within the class of adopted children on the basis of age when adopted. It is not based on any fair or just philosophy for the inheritance of property. It offends both the Fourteenth Amendment and §23 of Article I of our Constitution. The provisions as to inheritance should be declared void, which would leave in effect the prior statute on equal inheritance by all adopted children.

NOTE.—Reported in 150 N. E. 2d 740.