IN THE MATTER OF THE ESTATE OF SHERRY LYNN KUHN, DECEASED v. ROBERT KUHN ET AL.

[No. 869A152. Filed March 26, 1971. Rehearing denied April 26, 1971. Transfer denied August 3, 1971.]

*Owen W. Crumpacker* and *Crumpacker, Abrahamson & Reed,* of counsel, of Hammond, for appellant.

*John F. Beckman, Jr., Steven R. Crist,* and *Tinkham, Beckman, Kelly and Singleton,* of Hammond, for appellees.

## STATEMENT OF CASE AND FACTS

BUCHANAN, J.—This is an appeal from a judgment of the Starke Circuit Court wherein the Administrator's proposed distribution of the estate of Sherry Lynn Kuhn, an unmarried minor dying intestate, was set aside and a new distribution substituted which added to the plan of distribution the decedent's half-sisters and adopted sisters.

Robert H. Kuhn married Nancy Miller Kuhn in 1944, and their marriage was blessed with two children, Susan Letta Kuhn and Sherry Lynn Kuhn, the decedent.

His first marriage ending in divorce, Mr. Kuhn then married again and produced from this union Tracy Kuhn and Cecily Kuhn, half-sisters of the decedent, Sherry Lynn Kuhn.

After the death of his second wife, Mr. Kuhn married for the third time and this time he duly adopted the two minor female children of his third wife, *i.e.*, Nancy Lee Lincoln Kuhn and Melissa Sue Lincoln Kuhn, who thus became sisters of the decedent by virtue of being adopted by her natural father, Robert H. Kuhn (herein referred to as "adopted sisters").

Thus, when the decedent, Sherry Lynn Kuhn, died intestate on April 18, 1965, in Lake County, Indiana, she left surviving, her natural father, Robert H. Kuhn, her natural mother, Nancy M. Kuhn, and her natural minor sister, Susan L. Kuhn. She also left surviving, her two minor half-sisters, Tracy and Cecily Kuhn, and lastly her minor adopted sisters, Nancy Lee Lincoln Kuhn and Melissa Sue Lincoln Kuhn.

The Administrator objected to including decedent's half-sisters and adopted sisters in the plan of distribution.

At the hearing on the Petition To Determine Heirship, Robert H. Kuhn, the half sisters, and the adopted sisters were before the court by reason of an affidavit executed by Robert H. Kuhn authorizing an attorney, Joel Levy, to file on their behalf a Petition Objecting To Final Account and Petition To Determine Heirship During Administration.

Following final Determination of Heirship by the Court,

Appellant-Administrator filed a motion for a new trial alleging, in essence, that the judgment of the trial court was contrary to law and not sustained by sufficient evidence in that the court erred in its determination of heirship.

ISSUES—Pruning the legal shrubbery bares three questions for decision:

    I.   Are the decedent's sisters by reason of adoption of a common parent entitled to inherit from her under Indiana law?

   II.   Are decedent's sisters of the half blood entitled to inherit from her under Indiana law?

 III.   Were the decedent's sisters of the half blood properly before the court for adjudication of their rights?

Appellant-Administrator contends in effect that Burns § 6-201 setting forth the general rules of descent should be strictly construed and that "it is the law of the land that adopted children are not heirs at law of natural children, lineally or collaterally, absent any express statutory direction to the contrary." Appellant, still adhering to the doctrine of descent of property by blood lines, takes the same view as to property descending to brothers and sisters of the half blood.

Appellees' position is that on April 18, 1965, the date of decedent's death, there were two specific Indiana statutes clearly providing that adopted children of a parent of a decedent inherit from the decedent the same as natural brothers and sisters and that children of the half blood have the same status and rights of inheritance as children of the whole blood.

## DECISION

I. It is our opinion that the trial court did not commit error by including the adopted children of the father of the decedent in the plan of distribution.

Appellant's argument concerning the rights of adopted children to inherit from the natural child of a common parent cites certain early Indiana cases and cases from foreign juris-

dictions, none of which are relevant to an Indiana resident's death on April 18, 1965.

Prior to the adoption of the Probate Code of 1953, the Indiana courts did hold that adopted children could not inherit from the collateral kin of the adopting parents. *Jacobs* v. *Schulmeyer, et al.* (1947), 117 Ind. App. 275, 70 N. E. 2d 435. In 1953, however, the legislature altered and revised the standing of adopted children and in so doing implemented I.C. 1971 29-1-2-8, Ind. Stat. Anno. § 6-208, Burns 1953 Repl., which reads as follows:

"Adopted children. (a) *For the purpose of inheritance to, through and from a child* legally adopted during his minority, *such child shall be treated the same as if he was the natural child of his adopting parents,* and he shall cease to be treated as a child of his natural parents and of any previous adopting parents for the purposes of intestate succession * * *." (Emphasis supplied.)

Appellant manages to ignore the statute, which was in effect at the time of decedent's death on April 18, 1965. This statute is controlling insofar as her estate is concerned. *Scott* v. *Scott* (1958), 238 Ind. 478, 150 N. E. 2d 740, *Brown* v. *Critchell* (1886), 110 Ind. 31, 7 N. E. 888.

Appellant founds his argument solely on the belief that property should descend by blood. His quarrel is with the legislature and not the courts, as the descent of property by blood, at least as to adopted children, has not been the law in Indiana for many years. It is a doctrine of yesteryear.

The Appellate Court commented upon the statute affecting adopted children in the case of *In Re Kenny's Estate* (1958), 129 Ind. App. 199, 153 N. E. 2d 607 (transfer denied):

"The statute, as drawn and worded leaves no discernible opening for conditional interpretation. In effect, it provides that when a minor child is adopted it is no longer the child of or in the blood line of its natural parents for the purpose of any possibility of intestate inheritance. The natural ties of affection and interest between the adopted minor child and its blood relatives are not and, of course, cannot be

affected by the statute. *But for the purpose of intestate succession the child is freed from its former blood relationship status and is established in a new status as a member of a new family with full standing as one of its blood."* (Emphasis supplied.)

Two years later this court held that under the statute the children of an adopted child of the decedent's brother were entitled to take as heirs from the decedent. In so doing, Judge Cooper, speaking for the court in *Pointer* v. *Lucas* (1960), 131 Ind. App. 10, 169 N. E. 2d 196, stated that:

"The phrase 'to, through and from' means that property will be transmitted to such child, through such child and from such child as if he were the natural born child of such adopting parent. *For the purpose of inheritance such child is born again."* (Emphasis supplied.)

Thus, it seems clear in our opinion that adopted children were intended to fall into the category of brothers and sisters, as set out in I.C. 1971, 29-2-1, Ind. Stat. Anno. § 6-201(C) (3),[1] Burns 1953 Repl.

II. It is our opinion that the trial court committed no error in including in the plan of distribution the two half-sisters of the decedent.

Apellant's nostalgia for the rule of descent of property by blood extends to kindred of the half blood. His brief quotes from a Wisconsin case, *In Re Bradley* (1925), 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1, as an eloquent expression of the law that should be applicable here: "From time immemorial it has been held by English-speaking peoples that the property of intestate deceased persons should descend to kin-

---

1. In 1969 the legislature removed any doubt that had existed under the 1953 statute by amending the statute concerning adopted children to read in part as follows:

6-208. Adopted children.—For all purposes of intestate succession, including succession by, through or from a person, *both lineal and collateral,* an adopted child shall be treated as a natural child of his adopting parents; and he shall cease to be treated as a child of his natural parents and of any previous adopting parents: * * * Burns § 6-208, 1970 Cum. Supp. (Emphasis supplied.)

dred of the blood." Unfortunately, there is a terse Indiana statute which reads as follows:

> "Kindred of the half blood shall inherit the same share which they would have inherited if they had been of the whole blood." I.C. 1971, 29-1-2-5, Ind. Stat. Anno. § 6-205, Burns 1953 Repl.

There are disquieting cases, too, such as *Anderson* v. *Bell* (1894), 140 Ind. 375, 39 N. E. 735, and *Steward* v. *Wells* (1911), 47 Ind. App. 228, 94 N. E. 235, which establish that the terms brother and sister include both half and whole blood relations, and further that brothers and sisters of the half blood inherit equally with those of the whole blood.

III. The half-sisters of the decedent and the sisters of the decedent by reason of their adoption by Robert H. Kuhn were properly before the court for an adjudication of their rights.

While Robert H. Kuhn and the two half-sisters of the decedent were not before the court in a formal sense, as no guardian ad litem was appointed for them, they were nevertheless before the court for all purposes necessary for a determination of heirship. The Appellee Robert H. Kuhn had timely petitioned the court through his attorney for and on behalf of himself, the half-sisters, and the adopted sisters. This was all that is necessary for an adjudication of this kind. The court had a duty to adopt a plan of distribution taking into account all proper heirs of the decedent regardless of whether they were represented in the proceeding or not.

It is our opinion that the trial court committed no reversible error and its decision should be and is hereby affirmed.

Sullivan, P.J., Robertson and Lowdermilk, JJ., concur.

NOTE.—Reported in 267 N. E. 2d 876.

ON APPELLEES' MOTION TO DISMISS

PER CURIAM.—This matter is before us on the appellees' Motion to Dismiss. The appellees allege therein that this is

an appeal by the Administrator of the Estate of Sherry Lynn Kuhn, in his representative capacity, from the trial court's determination of heirship and direction by the Court to distribute the assets of the estate according to that determination. The appellees further allege that the administrator is not the proper party to appeal the trial court's determination of heirship and direction to distribute assets.

The appellant maintains that the administrator not only is the proper person to appeal the trial court's decision, but that he has the duty to appeal if he has reasonable grounds to believe that the trial court committed error.

It appears from the record that Sherry Lynn Kuhn, a minor, unmarried, domiciled in Hammond, Indiana, died in 1965. Her estate was administered in the Lake Superior Court at Hammond. After all the debts and administrative expenses were paid, the administrator filed his final accounting in which he proposed to distribute the remaining assets of the estate in three equal shares to the mother, father, and sister of the decedent. After notices of hearing on the final accounting had been published and served, the appellees Robert Kuhn (father of decedent), Tracy Kuhn, Cecily Kuhn, Nancy Lincoln and Melissa Lincoln (half sisters and adoptive sisters of the decedent) appeared and filed their "Petition Objecting To Final Account and Petition To Determine Heirship During Administration". The issues formed on this petition were venued to the Starke Circuit Court and submitted to the Court for decision. The Court made findings of fact and conclusions of law that the law was with the petitioners. The Court entered judgment accordingly, adjudging that the mother and father of the decedent were entitled to a one-fourth interest in her estate, and that the decedent's natural sister, her two half sisters and her two adoptive sisters were each entitled to a one-tenth interest in her estate.

From this determination the administrator appeals.

The appellees rely on the following cases in their Motion to Dismiss: *Murphey* v. *Murphey* (1910), 174 Ind. 426, 92

N. E. 165; *Messenger* v. *Messenger* (1938), 106 Ind. App. 127, 17 N. E. 2d 488; *Richcreek* v. *Richcreek* (1946), 116 Ind. App. 422, 64 N. E. 2d 308.

In each of these cases, it appears that all of the interested persons were made parties to the proceedings before the trial court. Accordingly these cases have held that the executor, in his representative capacity, was not the proper person to prosecute the appeal.

Thus in the case of *Murphey* v. *Murphey, supra,* we find the following:

> "The executor, in his representative capacity, is the only appealing party. What right he has to appeal is not apparent to the court. His duties as executor are wholly administrative, and as relating to the distribution of the estate it is his duty to make just such distribution as the will directs, under the guidance of the court. The will, as adjudicated by the circuit court and unappealed from by any party in interest, is no longer subject to question, and must be executed and the estate distributed in accordance with the court's mandate. This distribution is devolved upon the executor, and all beneficiaries being satisfied with the construction given the will by the court below, the executor clearly has no right to challenge it. It is none of his concern. If for any reason the judgment should be reversed at his request, his duty to carry out the will, as settled by the circuit court, would be none the less imperative.
>
> All this illustrates the wisdom of the principle that an appealing party must make it appear that he has an interest in the subject-matter of the judgment appealed from. He has no right to appeal from a judgment that only affects the rights of others, when such others are parties to the judgment. *Poundstone* v. *Baldwin* (1869), 145 Ind. 139, 144."

And in the case of *Richcreek* v. *Richcreek, supra,* we find this statement:

> "As heretofore shown, all of the legatees and devisees under the will of George W. Richcreek, deceased, were parties to this action in the trial court. They and all of the parties who had any interest or concern in the construction of Item Six of the will of William C. Smith were satisfied

and content with the interpretation placed upon this Clause by the trial court. Therefore we cannot understand what right the executor has to complain."

However, where the interested persons are not before the trial court in an adversary proceeding, but the rights of parties are determined in ex parte proceedings, as was the case in this instance, the Courts have held as the appellant contends, that the executor or administrator not only has a right, but a duty to appeal when he has reason to believe the trial court has committed error.

In the case of *Ruch, Administrator, et al.* v. *Biery et al.* (1886), 110 Ind. 444, 11 N. E. 312, a motion to dismiss was overruled. The Supreme court in that case stated:

"The court found that there remained on hand for distribution the sum of $8,745.20, as shown by the report of the administrator, making, in connection with the sums named as the consideration and value of the real estate conveyed, a total sum of $21,095.20.

"As conclusions of law the court stated that the lands were conveyed as advancements to each of the sons, for the amounts stated in the several deeds, and that the widow was entitled to one-third of the gross sum of $21,095.20, or $7,-031.73⅓, and that each of the six children was entitled to one-sixth of the remainder.

"Judgment was entered accordingly, over the exceptions duly taken by the administrator.

"The administrator appealed. He is joined in the appeal by two of the sons. There is a motion to dismiss the appeal, because no bond was filed within ten days.

"Section 2457, R. S. 1881, provides that it shall not be necessary in appeals by executors or administrators, that such persons file an appeal bond.

"That the sons were made parties appellant unnecessarily, will not authorize the dismissal of the appeal as to the administrator. It is also said that the latter has no such interest in the judgment rendered as authorized him to prosecute an appeal. This position is not tenable. It was the duty of the administrator to appeal if there was reasonable ground to believe that the court had fallen into an error in its judgment and order of distribution."

In the case of *Keener* v. *Grubb* (1909), 44 Ind. App. 564, 89 N. E. 896, Aaron Keener, as executor of the will of John Thimlar, deceased, filed his final report to which one Ira Grubb, as guardian of another, excepted. Judgment was for the exceptor, and the executor appealed. The appellee filed a motion to dismiss for the reason the appellant had no appealable interest. This Court overruled the motion to dismiss on the basis of the case of *Ruch* v. *Biery, supra*.

In the case of *Case* v. *Deal* (1912), 117 Ind. 288, 98 N. E. 56, the distinction is clearly made between the cases in which there was a distinct adversary proceeding in the trial court, and cases such as the case now before us, where there was not. The Court stated, at page 291:

> "It is apparent that appellant in his representative capacity had no interest in the matter other than his administrative duties relating to the distribution of the estate. So far as actual conflicting interests were concerned, the parties holding them were before the court and litigated them, and they were settled by the court. They are not questioning the correctness of the court's judgment, and appellant cannot do so, for whether the share of Nettie Case goes to one set or the other of the claimants, is of no concern to him. The settlement of this question necessarily removed any doubt as to his duties in making distribution.
>
> "In the cases of *Ruch* v. *Biery* (1887), 110 Ind. 444, 11 N. E. 312, and *Keener* v. *Grubb* (1909), 44 Ind. App. 564, 89 N. E. 896, it was held where questions of distribution arise on the presentation of a final report and exceptions thereto, and the administrator or executor has reasonable grounds to believe that the court has fallen into error in its judgment and order of distribution, he may appeal therefrom. *A manifest distinction exists between those cases and the class in which Murphey* v. *Murphey, supra, and this are. In the latter there is a distinct adversary proceeding with all the parties who may be affected before the court; in the former, there is not, necessarily, and interests may be involved with no one to represent them but the executor or administrator.*" (Our emphasis)

In the case of *Ohlfest* v. *Rosenberg* (1947), 225 Ind. 350, at 356, 75 N. E. 2d 147, the Supreme Court quoted from the

earlier case of *Ruch, Administrator* v. *Biery, supra,* and again re-stated the rule that it was the duty of the administrator to appeal if he had reasonable grounds to believe that the Court had fallen into error in its judgment and order of distribution.

Finally, in the case of *State ex rel. Schumacher* v. *Adams Circuit Court, etc., et al.* (1947), 225 Ind. 200, at 204, 73 N. E. 2d 689, the Supreme Court, speaking through Judge Gilkison, made the following excellent summary on the duty of an executor:

> "It is the duty of an executor to defend all actions that may be brought against the estate and to protect the estate from invalid and doubtful claims and obligations. He should interpose against such claims every legal objection that industry and care can furnish. It is his duty to protect the estate against every demand made against it which is not legally enforceable. He is regarded as the trustee or agent appointed by law, for the benefit and protection of creditors and distributees. It is his duty to guard against error in distribution by exercising the greatest possible care to see that all available evidence is fully and truthfully presented to the court in a hearing of a petition for distribution of the estate. 21 Am. Jur. *Executors and Administrators* §§ 223, 224, 227, p. 496, 497, 498; 34 C.J.S. *Executors and Administrators* § 439, p. 259; *Ruch, Admr.* v. *Biery* (1887), 110 Ind. 444, 447, 11 N. E. 312; *Keener* v. *Grubb* (1909), 44 Ind. App. 564, 89 N. E. 896. See *Rottger, Rec.* v. *First Merchants National Bank* (1933), 98 Ind. App. 139, 144, 145, 146, 184 N. E. 267; *Case* v. *Deal* (1912), 177 Ind. 288, 291, 98 N. E. 56; *Packer* v. *Overton* (1925), 200 Iowa 620, 203 N. W. 307. The interests of the petitioner in the matter before respondent court is adverse to the interests of the beneficiaries named in the will, and may be adverse to creditors. The executor is the trustee or agent appointed by law for the benefit and protection of creditors and distributees. It is his duty to protect the estate from every demand made against it which is not legally enforceable, and this includes the duty of protecting the estate from the petition in question, if the executor, in good faith, believes it to be legally unenforceable. This is upon the theory that it is his duty as executor to uphold the integrity and validity of the will and to defend his trust. *Re: Bernheim's Estate* (1928), 82 Mont. 198, 266 P. 378, 57 A. L. R. 1169, 1174. . . ."

Thus, in this case, where the proceedings were ex parte, the interested persons were not made parties to the action, the administrator had a duty to appeal the trial court's determination of heirship if he felt the Court's determination to be erroneous. Accordingly, pursuant to all of the above and foregoing authorities, the appellees' Motion to Dismiss is overruled.

White, J., concurs in result.

NOTE.—Reported in 256 N. E. 2d 701.