POINTER ET AL. *v.* LUCAS ET AL.

[No. 19,291. Filed September 15, 1960.]

12

*Dowden, Denny, Caughran & Lowe* and *William S. Hall,* both of Indianapolis, for appellants.

*John R. Walsh* and *Gilbert W. Butler,* both of Martinsville, for appellees Helen Lucas and Nellie Deatline.

*Kivett & Kivett* and *Pearl Lee Hampton,* both of Indianapolis, for appellee Mamie J. Pointer.

*Charles H. Foley,* of Martinsville, for appellees Varnell Beard, Jack Naugle and Jay Naugle.

COOPER, J.—This is an appeal from the Morgan Circuit Court arising out of a dispute over the ownership of a forty-acre tract of land located in Morgan County, State of Indiana.

The record before us reveals that two of the appellees, namely: Helen Lucas and Nellie Deatline, on February 19, 1957, brought an action in the Morgan Circuit Court to partition and quiet the title to said land against the appellants herein. After the cause was submitted and judgment rendered in favor of the appellees, the appellants herein prosecuted this appeal from said judgment, the assigned error being, "The court erred in overruling the appellants' motion for a new trial."

The appellants' motion for a new trial was based upon the following statutory grounds, to-wit:

1. The decision of the court is contrary to law;

2. The decision of the court is not sustained by sufficient evidence.

In reviewing the record before us, it is apparent that the ownership of the said land depended upon the construction of the language contained in a certain deed executed by Benjamin F. Pointer and Nancy A. Pointer, husband and wife, the owners thereof, on July 27, 1903.

There is no dispute as to the facts in the case as they were all stipulated by the parties. It is our opinion that all of such facts as stipulated are essential to a full and complete understanding of the case now before us. It appears from the records that the stipulation reads as follows:

"IT IS STIPULATED BY AND BETWEEN THE PARTIES HERETO THAT THE FOLLOWING MAY BE CONSIDERED BY THE COURT AS FACTS IN EVIDENCE IN THIS CAUSE:

"1. Benjamin F. Pointer and Nancy A. Pointer, his wife, on July 27, 1903 executed the following deed, to wit:

" 'THIS INDENTURE WITNESSETH: That Benjamin F. Pointer and Nancy A. Pointer, husband and wife of Morgan County, in the State of Indiana, Convey and Warrant to Jessie Withington of Morgan County, in the State of Indiana, for the sum of Love and Affection, the receipt of which is hereby acknowledged, the following real estate in Morgan County, in the State of Indiana, to wit:

"The Southeast quarter (SE 1/4) of the Southeast quarter (SE 1/4) of Section One (1) Township Twelve (12) North of Range One (1) East, containing Forty (40) acres, more or less.

"This deed is to take effect and said Jessie Withington is to come into possession of the above described land at the death of both Benjamin F. Pointer and Nancy A. Pointer. If said Jesse Withington should have issue after this date she may devise said land to such issue, but in the event she

should die without such issue then the land shall revert to her brothers and sisters or their heirs.

"IN WITNESS WHEREOF, the said Benjamin F. Pointer and Nancy A. Pointer, husband and wife, have hereunto set their hand and seal, this 27 day of July, A.D. 1903.

B. F. Pointer     (L. S.)

Nancy A. Pointer     (L. S.)

"State of Indiana, Morgan County, SS:

"Before me, J. E. Sedwick, in and for said County, this 27 day of July 1903, personally appeared B. F. Pointer and Nancy A. Pointer and acknowledged the execution of the annexed deed.

"Witness my hand an notarial seal.

(Seal)     J. E. Sedwick,
           Notary Public.

"My commission expires: Jan. 2, 1907.

"Recorded: March 5, 1907 at 8:00 o'clock A.M.

           John V. King,
           Recorder Morgan County

"Deed Record 76 page 452."

"2. That the said Benjamin F. Pointer departed this life testate a resident of Morgan County, Indiana, on September 12, 1903, and his wife the said Nancy A. Pointer departed this life on September 24, 1927.

"3. That the said Benjamin F. Pointer and Nancy A. Pointer left surviving as their children and heirs at law one Nellie Hiatt now Nellie Deatline and William Wallace Pointer, Rufus R. Pointer, Harry Pointer and Jesse Withington as their children and only heirs at law.

"4. That thereafter the said William Wallace Pointer departed this life testate on April 6, 1945, leaving surviving him as his heirs and only heirs at law Varnell Beard, Jack Naugle and Jay Naugle, grandchildren.

"5. That thereafter on May 18, 1952, Harry Pointer departed this life intestate a resident of Marion County, Indiana, leaving surviving him as his heirs and only heirs at law Elsie Pointer, his widow, Harry Pointer II, and Patricia Pointer

Schaffer, the said Harry Pointer II and Patricia Pointer Schaffer being the children of Edward Pointer who was adopted by the said Harry Pointer as a child on January 1921, being then twenty (20) years of age and who had departed this life intestate July 16, 1947, prior to the death of his adopted father, Harry Pointer, and that at the time of his death did leave the said Harry Pointer II, and Patricia Pointer Schaffer as his only children.

"5. That the said Elsie Pointer was the first and only wife of Harry Pointer deceased and the natural mother of Edward Pointer.

"6. And that thereafter Rufus R. Pointer departed this life intestate a resident of Marion County, Indiana, leaving surviving him as his heirs and only heirs at law Mamie J. Pointer a second childless widow whose age on December 5, 1956 was Sixty-seven (67) years and Helen Lucas a daughter.

"7. That the said Jesse Withington grantee in the deed hereinabove referred to did by virtue of said deed upon the death of Nancy A. Pointer go into possession of the real estate described in said deed and contained in possession thereof until the date of her death on December 5, 1956; that her name at the time of her death was Jesse Poston and received all the income, rents and profits therefrom; paid the taxes thereon until the date of her said death. That the said Jesse Withington Poston had no children born to her after July 27, 1903; that prior to July 27, 1903 there had been born to the said Jesse Withington one child by a previous marriage, to-wit: Lincoln Breedlove, who was in being on July 27, 1903.

"8. That there is now in being the said Nellie Hiatt Deatline, Varnell Beard, Jack Naugle, Jay Naugle, Mamie J. Pointer, Helen Lucas, Elsie Pointer, Harry Pointer II, Patricia Pointer Schaffer, all of whom survived the said Jesse Withington Poston and were in being at the date of her death."

The foregoing was all of the evidence given in said cause. Thereafter, the trial court, upon the above-stipulated evidence, made the following pertinent findings:

". . . that said grantors did intend and that the true intent and meaning of the language used in the above described deed of conveyance is that said real estate vested in the said Jessie Withington, daughter of the grantors, and in the event she should die without issue born to her subsequent should vest in children of the grantors or their heirs, and they did not intend that said real estate vest in persons other than their lineal descendants to be ascertained as of the time of the death of the said Jessie Withington, their daughter.

". . . that the plaintiffs, Helen Lucas and Nellie Deatline and the defendants, Varnell Beard, Jack Naughle and Jay Naugle are entitled to have their title to said real estate quieted as against the remaining defendants herein." (Harry Pointer II, Patricia Pointer Schaffer, Elsie Pointer, appellants, and Mamie J. Pointer, appellee).

The trial court found that said first parties are the absolute owners of said real estate and the second parties have no interest whatsoever therein.

The record in the case creates some doubt whether the instrument referred to as a "Warranty Deed" was in fact a deed, rather than a testamentary instrument, since there is nothing in the record showing clearly that there was an actual delivery of the deed by the grantors to the grantee, which is always necessary under our law to make a deed effective as an instrument of conveyance. The deed was signed and acknowledged on July 27, 1903, and was duly recorded in the office of the Recorder of Morgan County on March 5, 1907, which was after the death of the grantor, Benjamin F. Pointer, on September 12, 1903, but before the death

of his wife, Nancy A. Pointer, on September 24, 1927. The grantors Benjamin F. Pointer and Nancy A. Pointer were the father and mother, respectively, of the grantee, Jessie Withington, and the consideration for the deed was love and affection. The parties stipulated that the deed was "executed," and the trial court so found. Our court has held in the case of *Bercot* v. *Velkoff* (1942), 111 Ind. App. 323, 332, 41 N. E. 2d 686, that:

> "In order that an instrument purporting to convey title to land or an interest or estate in land may be valid as a deed and operative to pass such title to or interest in land, it is essential that there be a grantor, a grantee, and a thing granted, and that it convey a present interest or estate. It is further necessary that the instrument be signed by the grantor, or some one whom he directs to sign for him, or his authorized agent, be attested and acknowledged in conformity to the local statutory requirements, and delivered by the grantor to the grantee or to some one in his behalf and accepted by the grantee."

See also *Sodders* v. *Jackson* (1942), 112 Ind. App. 179, 44 N. E. 2d 310; *Collins* v. *Cornwell et al.* (1892), 131 Ind. 20, 30 N. E. 796. All of the parties to this action base their claim of ownership upon the deed itself and all concede and acknowledge its legality. We acquiesce in this conclusion of the parties and for the purpose of this opinion shall treat it as a valid instrument of conveyance.

There is no question but that the language of the deed is ambiguous and must be construed in order to determine the true intention of the grantors. In making such construction, we must look to the instrument as a whole. Every word and every part of the instrument must be *weighed, considered* and *compared* with every other part and no part should be

*rejected,* but it is the sense of the deed as a *whole* that is *paramount* and *controlling. Evans* v. *Dunlap* (1905), 36 Ind. App. 198, 75 N. E. 297; *Claridge* v. *Phelps* (1937) (T. D. 1938), 105 Ind. App. 344, 11 N. E. 2d 503 and cases cited. Since it is always the intention of the grantors that controls the issue, the question for the court to determine in this and every other similar construction case, is not what the parties meant to say, but what they meant by what they did say. See *Hull* v. *Adams* (1948), 399 Ill. 347, 77 N. E. 2d 706.

The appellants in their brief in the matter now before us contend and base their claim to an interest in the real estate in question upon the theory that the deed executed by the grantors, Benjamin F. Pointer and Nancy A. Pointer, as husband and wife, on July 27, 1903, gave to Jessie Withington a life estate only in the lands and that the remainder interest vested as of that date in the sister and three brothers of Jessie Withington; namely, Nellie Hiatt, now Nellie Deatline, William Wallace Pointer, Rufus R. Pointer and Harry Pointer, subject to the life estate reserved in the grantors and the following life estate in Jessie Withington and further subject to the power in Jessie Withington to divest such remainder by a devise of the lands to any issue that she might have after the date of the execution of the deed.

Appellants further contend that since Jessie Withington died without afterborn issue and without exercising her power to devise such lands as provided in the deed, the interests of her brothers and sister in said land became indefeasible and upon the death of Jessie Withington passed to their heirs at law and not to the heirs at law of said Jessie Withington.

Appellants conclude, therefore, that the appellants Harry Pointer II, Patricia Pointer Schaffer and Elsie

Pointer, being the sole and only heirs at law of Harry Pointer, a deceased brother of Jessie Withington, would be entitled to his share in said lands; and Mamie J. Pointer and Helen Lucas, being the sole and only heirs at law of Rufus R. Pointer, deceased, also a brother of Jessie Withington, would be entitled to his share in said lands.

The appellees herein seek to uphold the decision of the trial court upon two separate and distinct theories, the first being that the grantors by the language contained in the deed, intended to and did convey to the grantee, Jessie Withington, an absolute fee in the real estate involved and one that could endure forever and one that she could convey at will. They contend the appellants took no interest in the real estate at the time the deed was executed on July 27, 1903, except the mere possibility of receiving the fee some time in the future in the event Jessie Withington should die without afterborn issue and without exercising her power to devise such real estate to such issue. As a consequence thereof, the brothers and sister and their heirs who would take such real estate in case of default of such *afterborn issue* are to be determined as of the date of the death of the said Jessie Withington, which occurred on December 5, 1956, and not as of the date of the execution of the deed, which occurred on July 27, 1903.

The second theory of appellees is that the first or granting clause of the deed conveyed an absolute fee in the real estate to the grantee, Jessie Withington, and that the second clause or "habendum" which states that, "If said Jessie Withington should have issue after this date she may devise said lands to such issue, but in the event she should die without such issue then the land shall revert to her brothers and sisters or their heirs," is contradictory of and repugnant to the grant

of the fee to Jessie Withington in the first clause and is therefore void. They contend that no remainder of any kind was created in her brothers and sisters by the deed and upon her death intestate, the real estate descended to her then heirs at law according to the laws of descent and the appellants (not being heirs at law) have no interest therein and take nothing.

The first theory of the appellees, in our opinion, is untenable. A casual reading of the deed in question in its entirety convinces us that the grantors never intended to convey to their daughter, Jessie Withington, a greater interest in the lands in question than a life estate coupled with a power to devise to any issue that she might have after the date of the execution of the deed. There are no provisions in the deed, the happening of which would enhance her interest. The record before us reveals that Jessie Withington had a child, Lincoln Breedlove, by a former marriage who was alive at the time the deed was executed. For some reason, not disclosed by the evidence, the grantors did not wish this child to have any interest in the land. They did not, however, object to any afterborn issue of their said daughter acquiring an interest. It was undoubtedly for this reason, to omit the first child and include any future issue, that prompted them to give her the power to devise such land to such future issue. The further provision, that upon default of such afterborn issue the property should "revert to her brothers and sisters or their heirs," is further, if not conclusive evidence of the grantors' intent to convey but a life interest to her. This court cannot ignore the use of all such provisions, nor hold that such language has no meaning. The grantors unquestionably knew that a conveyance of the absolute fee would have made it possible for the said Lincoln Breedlove to have in-

herited the lands upon the death of their daughter without later issue.  Viewing the deed as a whole, we are constrained to hold that the grantors intended to convey to their daughter, Jessie Withington, but a life estate with the power to devise the lands to afterborn issue.  The language of the deed permits no other construction.

Frequently deeds contain a provision giving to the grantee of a life estate in real estate the power to devise the property in question to someone.  Such power, however, is not an estate, but does not imply ownership or an estate, nor does it enlarge a life estate into a fee.  21 C. J., §69, p. 939, 940; *Beatson* v. *Bowers* (1910), 174 Ind. 601, 91 N. E. 922, and cases cited; Restatement of the Law of Property, §157, cl. c. 3.  "The use of the term 'life estate' is not necessary to create such an estate, but the intention to create a life estate may be expressed in any equivalent and appropriate language."  31 C. J. S. Estate, §32, p. 41; *Claridge* v. *Phelps, supra; Gibson* v. *Brown* (1916), 62 Ind. App. 460, 110 N. E. 716, 112 N. E. 894.

The words "shall revert to" as used in the habendum of the deed are words of conveyance and have been held by the courts to mean "shall go to."  *Ames, Admr.* v. *Conry, Admx.* (1927), 87 Ind. App. 149, 165 N. E. 435, and cases cited.  Also, the words in the habendum of the deed stating that: "This deed is to take effect and said Jessie Withington is to come into possession of the above described land at the death of both Benjamin F. Pointer and Nancy A. Pointer," do not make the deed testamentary in character and do not in fact, postpone the taking effect of the deed as an instrument of conveyance.  Its only effect was to reserve a life estate in the grantors and thus postpone the possession of the grantee until after the

death of the grantors. Our courts have repeatedly held that these and words of similar import, when used in a deed, have reference to the time of possession and not to the time of the vesting of the estate. *Kelley, Gdn.* v. *Shimer, Adm.* (1899), 152 Ind. 290, 53 N. E. 233; *Adams* v. *Alexander* (1902), 159 Ind. 175, 64 N. E. 597; *Kokomo Trust Co.* v. *Hiller* (1917) (T. D. 1918), 67 Ind. App. 611, 116 N. E. 332; *Bruce et al.* v. *Bissell et al.* (1889), 119 Ind. 525, 22 N. E. 4.

The second theory of the appellees is equally untenable. The first, or granting clause of the deed makes a definite conveyance of the real estate in question to the grantee, Jessie Withington, for the consideration of love and affection. Had the grantors stopped at this point there is no question but that the grantee, Jessie Withington, would have received a fee simple interest in said lands. The grantors, however, added the second clause which is generally called a "habendum." This habendum defines the character of the estate that the grantors reserved to themselves and the character and extent of the interests that Jessie Withington and her brothers and sister and their heirs are to receive in the lands conveyed. Habendum clauses of this nature are frequently used in deeds of conveyance. It is only when the habendum contradicts or repudiates the first clause that it will be subordinated to the granting clause. The courts in seeking to determine the intention of the grantors from an examination of a deed will give the same attention and consideration to the habendum as to any other part of the deed. We are aware of the general rule of construction that when the habendum of a deed seeks to contradict or destroy the conveying clause and the two provisions cannot be reconciled, that the first part, or declaration will prevail. We do not believe, however, that this rule of con-

struction is applicable in this case. The habendum in this case does not contradict or destroy the first clause, it merely defines the interest that the named parties shall receive. *Claridge* v. *Phelps, supra; McGahan* v. *McGahan* (1926), 84 Ind. App. 500, 151 N. E. 627; *Adams* v. *Merrill* (1909), 45 Ind. App. 315, 87 N. E. 36.

.The appellees under both theories advanced by them in support of the trial court's decision, arrive at the same conclusion with respect to the rights of Mamie J. Pointer, the childless second widow of Rufus R. Pointer, deceased, Elsie Pointer, the widow of Harry Pointer, deceased, and Harry Pointer II and Patricia Pointer Schaffer, children of Edward Pointer, the deceased adopted son of Harry Pointer, in said lands. This conclusion is in substance that since Jessie Withington took an absolute fee in said lands by virtue of said deed executed on July 27, 1903, it was her property thereafter, and her heirs entitled to inherit the same from her are to be determined as of such date, to-wit, December 5, 1956. Inasmuch as said widows of her deceased brothers and said grandchildren through adoption of her deceased brother were not related to Jessie Withington, they take no part of the estate.

Were the appellees' theory of ownership of the lands in Jessie Withington correct, a theory which we do not accept, such conclusion as to the right to inherit from her by Mamie J. Pointer and Elsie Pointer might be true, but it certainly would not be true with respect to Harry Pointer II and Patricia Pointer Schaffer. On December 5, 1956, the date of the death of Jessie Withington, there was in force in this state a statute, §6-208, Burns', 1953 Repl., pertaining to the inheritance of adopted children that reads as follows:

". . . (a) For the purpose of inheritance to, through and from a child legally adopted during

his minority, such child shall be treated the same as if he were the natural child of his adopting parents, and he shall cease to be treated as the child of his natural parents and of any previous adopting parents for purposes of intestate succession: Provided, that if a natural or any previous adopting parent shall have married the adopting parent, the adopted person shall also be considered the child of such natural or previous adopting parent."

This means as it says, that when a minor child is adopted, such child, for the purpose of inheritance, shall cease being the child of his natural parents—he will not inherit from such natural parents or their relatives and they shall not inherit from him. He will thereafter inherit from such adopting parents and their collateral relatives and they in turn will inherit from him. The phrase "to, through and from" means that property will be transmitted to such child, through such child and from such child the same as if he were the natural born child of such adopting parent. For the purpose of inheritance such child is born again. The foregoing section of our statute is the same as the statute of the State of Ohio.

In the case of *Cook* v. *Crabill* (Ohio, 1959), 164 N. E. 2d 425, the Court of Appeals, in applying such statute, held, in substance, that a devise of real estate by a testator to his son and daughter equally, "and in case of the death of either without *living issue* then the equal share of the deceased, shall revert to my living children or *their heirs* in equal amounts," should under the provisions of said statute be held to include an "adopted daughter" as "issue" and as an heir of the deceased son of the testator and as such is entitled to her adopted father's share of the real estate involved.

Our statute gives to a child adopted during minority, all of the rights of "issue" and "heirs," as such terms

apply to intestate succession and it is therefore unnecessary to engage in an extended controversy over whether adopted children are in fact "issue" or "heirs" within the general definitions of such terms.

The rights of adopted children to inherit under our statutes of descent are determined as of the date of the death of the intestate. *Scott* v. *Scott, Admrx. et al.* (1958), 238 Ind. 474, 150 N. E. 2d 740; *In re Kenny's Estate* (1958), 129 Ind. App. 199, 153 N. E. 2d 607.

By the provisions of the above statute, Harry Pointer II and Patricia Pointer Schaffer, the children of Edward Pointer, the adopted son of Harry Pointer, deceased, are upon the appellees' own theories of the case, entitled to their grandfather's (Harry Pointer) share in equal parts.

The contention of the appellants that a fee simple estate in remainder vested in the sister and three brothers of Jessie Withington immediately upon the execution of the deed by Benjamin F. Pointer and Nancy A. Pointer on July 27, 1903, subject to the life estate reserved in the grantors and the following life estate in Jessie Withington and further subject to such estate in remainder being divested upon Jessie Withington having issue after that date and exercising her power to devise such property to such issue, is in our opinion correct.

Sec. 114, 26 C. J. S., Deeds, p. 933, 934, sets out the rule with respect to vested and contingent remainders as follows:

"The law favors the vesting of remainders at the earliest possible moment, and a remainder will be construed as vested rather than as contingent where such a construction can be given to the instrument without doing violence to the intention of the grantors. A remainder is to be

considered vested when a presently identifiable person in being would have a right to the immediate possession on determination of the intermediate particular estate, although the remainder may terminate prior to the ending of the precedent estates, or *may be divested by the exercise of an outstanding power to dispose of the fee.* An estate in remainder is not rendered contingent by postponing the time of possession or enjoyment; the uncertainty which distinguishes a contingent remainder is the uncertainty of the right, not the uncertainty of enjoying possession. A remainder is vested when the events on which it is dependent will necessarily happen at or prior to the termination of the precedent estates. When a conveyance creates one or more prior interests, the maximum duration of which is measured by lives or years, and provides that on the expiration of such interests, the ownership in fee simple shall belong to a presently identifiable person, such person has a vested remainder, . . . when such person's taking depends on his surviving the life tenant or grantor, his interest is contingent, . . ." (Our emphasis.)

We subscribe to the above statement of the rule. It is supported by innumerable authorities, including the following: Restatement of the Law of Property, §157, cl. c. 3; *Heilman et al.* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Chicago, etc., Ry. Co.* v. *Beisel* (1952), 122 Ind. App. 448, 106 N. E. 2d 117; *Amos et al.* v. *Amos et al.* (1889), 117 Ind. 19, 19 N. E. 539; *Coquillard* v. *Coquillard* (1916), 62 Ind. App. 489, 113 N. E. 481; *Alsman* v. *Walters* (1914), 184 Ind. 565, 106 N. E. 879.

When measured by the above rule the instant case contains all of the elements necessary to support a vested remainder in the sister and three brothers of Jessie Withington. There were four of them living at the time the deed was executed; namely, Nellie Hiatt, now Nellie Deatline, William Wallace Pointer, Rufus R. Pointer and Harry Pointer. The conditions in the deed

that would or could divest these remaindermen of their interest in the lands, (a) birth of issue to Jessie Withington and (b) the exercise of her power to devise such property to such issue, were sure to come to pass one way or another during her lifetime or upon her death. The brothers and sister were not required to survive her in order to receive a vested interest. The conveyance was direct to them and without conditions precedent to a vesting of the remainder. They could dispose of such interest by conveyance *inter vivos* or devise, or such interest could pass by intestate succession. Restatement of the Law of Property, §§162, 164, 165.

Research reveals that there has been so much written by text writers and the courts for the purpose of distinguishing between vested and contingent remainders that it is sometimes difficult, if not impossible, to apply an accepted formula of distinction to a given state of facts. The tremendous volume of comment has resulted in tremendous confusion. The Restatement of the Law of Property has wholly abandoned the use of the term "contingent remainder" because of this confusion in the law. Restatement of the Law of Property, §157, p. 542 (Note); *Allen et al.* v. *McKee* (1958), 128 Ind. App. 329, 148 N. E. 2d 343. The confusion in this and most cases, in our opinion, is due to the failure of the parties to keep in mind that the remaindermen were not required to survive the life tenant in order to receive an interest in the lands. They acquired their interest as of the date of the execution of the deed on July 27, 1903. The grantors evidently used the word "heirs" to mean those persons that would take by intestate succession and not children. Therefore, spouses of deceased brothers and sister would be eligible to take as heirs. Upon the death of Jessie Withington on Decem-

ber 5, 1956, their remainder became a present interest and the appellants as the sole heirs of Harry Pointer, deceased, would take one fourth interest in the real estate as follows: Elsie Pointer, widow of Harry Pointer, six forty-eighths (6/48ths); Harry Pointer II (grandchild), three forty-eighths (3/48ths) and Patricia Pointer Schaffer (grandchild), three forty-eighths (3/48ths). Mamie J. Pointer, the second childless widow of Rufus R. Pointer, deceased, and Helen Lucas, the daughter of said Rufus R. Pointer by a previous marriage, are entitled to the one fourth (1/4) interest of Rufus R. Pointer as follows: Mamie J. Pointer, a life interest in one third (1/3) of said one fourth (1/4) interest and Helen Lucas is entitled to the fee in said one fourth (1/4) or twelve forty-eighths (12/48ths) interest subject to the life interest in one third (1/3) or four forty-eighths (4/48ths) thereof belonging to Mamie J. Pointer. Varnell Beard, Jack Naugle and Jay Naugle are entitled to the one fourth (1/4) interest of their grandfather, William Wallace Pointer, as follows: Varnell Beard, six forty-eighths (6/48ths), Jack Naugle, three forty-eighths (3/48ths) and Jay Naugle, three forty-eighths (3/48ths). Nellie Deatline, sister of Jessie Withington, is entitled to twelve forty-eighths (12/48ths) of said real estate.

The trial court erred in excluding the heirs of Harry Pointer and Rufus R. Pointer of an interest in said lands; therefore, judgment is reversed, with instructions to grant the appellants' motion for a new trial, and for further proceedings in accordance with the views expressed herein.

Ax, P. J., concurs in result.

Myers, J., and Ryan, J., concur.

NOTE.—Reported in 169 N. E. 2d 196.