**CONSOLIDATED RAIL CORPORATION, INC. and West Central Indiana Railroad Recreation, Inc., Appellants–Defendants,**

v.

**Pam LEWELLEN, Jerry Howard, Linda K. Howard, Dale Remley, Doris M. Remley, Cynthia Denman, David Denman, Nola Parker, Charles Stephen Roudebush and all others similarly situated, Appellees–Plaintiffs.**

No. 54A01–9508–CV–249.

Court of Appeals of Indiana.

June 6, 1996.

Nicholas C. Nizamoff, Lonnie D. Johnson, Paul T. Fulkerson, White & Raub, Indianapolis, for Appellants.

Henry J. Price, James A. Mellowitz, Price & Barker, Indianapolis, for Appellees.

**OPINION**

ROBERTSON, Judge.

Conrail Railroad and West Central Indiana Rails to Trails, Inc. [Conrail] bring this discretionary, interlocutory appeal of the grant of partial summary judgment in favor of Appellees, Pam Lewellen, Jerry Howard, Dale Remley, Cynthia and David Denman [Landowners] in the landowners' class action lawsuit against Conrail to quiet title in segments of an abandoned railway corridor and to recover compensation for slander of title, criminal conversion, and criminal trespass. Conrail raises three issues, but because only one has been properly certified for interlocutory appeal under Ind.Appellate Rule 4(B)(6), we address it only.[1] Restated, it is:

---

1. The two issues raised in Conrail's brief which we do not address pertain to its cross-motion for summary judgment on the landowners' claims for slander of title, criminal conversion, and

Whether the trial court erred in construing certain 19th century deeds in favor of the landowners, determining that they conveyed mere easements to the Railroad which were extinguished upon abandonment, rather than fee simple interests.

We affirm.

## FACTS

The dispositive facts are not disputed. Each of the landowners owns real estate abutting a former railroad corridor extending 29 miles from the western banks of the Wabash River to the west side of Crawfordsville, Indiana. The deeds, handwritten more than 100 years ago, which conveyed the sections of the railroad corridor to the original railroad company, are substantially similar, many of which state, in pertinent part:

> [Grantor], for consideration, "... hereby Conveys and Warrants to the [Railroad] the Land, Right of way and Right of drainage for its Railway ..."

(Differences in capitalization between Deeds ignored). One of the deeds also contains the following language: "(if the Road is abandoned this Land Returns to me)." One of the deeds conveyed "a strip of land through a part of a lot of land of twenty acres ... for the Right of Way of [Railroad]." Another conveyed: "the Right of Way for so much of said Rail Road as may pass through the following described piece, parcel or body of land ..."

Over the years, activity on the line declined and Conrail elected to discontinue rail service over the corridor. In 1982, the Interstate Commerce Commission issued Conrail a Certificate of Abandonment. By 1985, Conrail had removed the tracks and materials, but had left other structures such as bridges, culverts, and drainage tiles in place. Conrail continued to pay real estate taxes on the land.

Co–Defendant West Central Indiana Rails to Trails, Inc. [Rails to Trails] is a public interest group dedicated to preserving rail corridors by converting them into recreational trails. Rails to Trails purchased Conrail's interest in the corridor to preserve the "railroad land and corridor consistent with the purposes of the Federal National Trails System Act, as amended, 16 U.S.C. § 1241 et seq. with funds allocated under the Intermodal Surface Transportation Efficiency Act, 49 U.S.C. § 101, et seq. and intended to preserve the corridor until it could be deeded to Montgomery County and the City of Crawfordsville for a linear park.[2] The transaction was evidenced by a quit-claim deed recorded July 6, 1994.

However, the landowners filed the present class action lawsuit claiming that Conrail had

criminal trespass. With respect to Conrail's motion, the trial court granted landowners' motion for a continuance because "further discovery should be allowed to proceed to determine whether or not there are genuine issues of material fact for the trier of fact to determine and that summary judgment on those issues should be considered at a later date." (Trial Court's June 2, 1995 Order). In its petition to the trial court for certification of the interlocutory order for appeal, Conrail petitioned the trial court "for an order certifying for appeal to the Indiana Court of Appeals the Court's interlocutory order entered on June 2, 1995 *granting plaintiffs partial summary judgment.*" (Emphasis added). An examination of Conrail's petition, as well as the petition filed in this court seeking an order accepting the interlocutory appeal, reveal that the only issue for which certification was sought was the "issue of deed construction" (Conrail's Petition For Certification of Interlocutory Order For Appeal, p. 3). As the trial court had continued the determination of Conrail's motion for summary judgment, and Conrail did not seek certification for interlocutory appeal of this order, we will not address the issues which pertain to Conrail's cross-motion for summary judgment. *See* App.R. 4(A), (B), & (E); *Berry v. Huffman,* 643 N.E.2d 327 (Ind.1994).

**2.** An Amicus Curiae brief was submitted by City of Crawfordsville, Crawfordsville Park Board, Montgomery County, Sugar Creek and Wabash River Trail Authority, Montgomery County Convention and Tourism Bureau and Rails To Trails Conservancy. The amici urge us to find that Conrail had owned the corridor in fee in order that they can proceed with their plan to preserve the corridor for use as a "rail trail." The amici argue that the use of the corridor as a rail trail is in the public's best interest and in accordance with sound public policy as established by The National Trails Act, The Intermodal Surface Transportation Efficiency Act (ISTEA), and Indiana's Rails to Trails Act, Ind.Code 36–10–3–1. They also note that Montgomery County and the City of Crawfordsville have been allocated $800,000.00 in federal "transportation enhancements" funds to develop the trail.

never acquired a fee simple interest in the corridor but had acquired only a series of easements to use the right-of-way for its railroad which, upon Conrail's abandonment of the line, were extinguished and had reverted back to the landowners. Upon the landowners' motion, the trial court imposed a preliminary injunction enjoining Rails to Trails from opening up the corridor for public use, from advertising the corridor as a public recreational trail, or from altering the corridor in any way.

The parties filed cross-motions for summary judgment. The trial court granted partial summary judgment in favor of the landowners which had the effect of quieting title in their favor determining that the deeds in question had conveyed to Conrail a series of right-of-way easements which had been extinguished upon the abandonment of the corridor. This discretionary, interlocutory appeal ensued. Additional facts are supplied as necessary.

## DECISION

Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Great Lakes Chemical Corp. v. International Surplus Lines Insurance Co.*, 638 N.E.2d 847, 849 (Ind.Ct.App.1994). In reviewing a motion for summary judgment, this court must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Cloverleaf Apartments, Inc. v. Town of Eaton*, 641 N.E.2d 665, 667 (Ind.Ct.App.1994). A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993).

The present case represents yet another class action lawsuit similar to *CSX Transpor-*

*tation, Inc. v. Clark*, 646 N.E.2d 1003 (Ind. Ct.App.1995), in which we noted:

in the past twenty years, railroads have abandoned hundreds of miles of tracks in Indiana as the demand for railroad service has declined.[3] The law is well-established that where a railroad holds only an easement or lesser interest in the property upon which its tracks cross, the abandonment of the tracks triggers an extinguishment of the railroad's interest and ownership reverts to the fee simple owner with a deed containing the property within its description or, if none, the adjoining fee simple owners. ...; *Ross, Inc. v. Legler* (1964), 245 Ind. 655, 199 N.E.2d 346. However, where the railroad holds a fee simple interest in a railroad corridor, an abandonment does not trigger an extinguishment of the railroad's fee simple interest. *Simkin v. New York Central R.R. Co.* (1966), 138 Ind.App. 668, 214 N.E.2d 661. The increasing number of railroad track abandonments has sparked a great deal of litigation over the ownership of abandoned railroad corridors. *See, e.g., Brown v. Penn Central Corporation* (1987), Ind., 510 N.E.2d 641; *Lake County Trust Co. v. Lane* (1985), Ind.App., 478 N.E.2d 684, *trans. denied; Richard S. Brunt Trust v. Plantz* (1983), Ind.App., 458 N.E.2d 251. In an effort to achieve judicial economy and avoid the costs of repetitive suits by individual landowners, class actions have been employed to clear title to these abandoned rights-of-way. *See e.g., CSX Transportation, Inc. v. Rabold* (1992), Ind.App., 593 N.E.2d 1277, *trans. denied.*

The clearing of title to these abandoned corridors is important to the adjacent landowners (many of whom are farmers) because the land, in many cases, may be returned to productive farming. Moreover, the clearing of title enables landowners to move their fences to the borders of their property, post areas to prevent hunting, and overall assures that the right-of-way will not be used in a manner inconsis-

---

**3.** From 1950 through 1994, more than three thousand miles of Indiana rail line were removed from service, leaving approximately four thousand two hundred miles of Indiana rail line in service. Dennis K. McKinney, *A Railroad Ran*

*Through It, in* Staying on The Cutting Edge of The Ever Changing Face of Real Estate Law In Indiana p. 1 (Indiana Continuing Legal Education Forum, 1995).

tent with the interests of the adjacent landowners. Most of these landowners do not have a sufficiently large economic claim to justify the expense of litigating their claims against [the railroad] separately.

646 N.E.2d at 1005.

■ The language used in a grant to a railroad controls the nature and extent of the interest acquired by it. McKinney, p. 8. A deed to a railroad is to be construed in its entirety and the parts are to be construed together so that no part is rejected. *Brown,* 510 N.E.2d at 643. Where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. *Id.* The conveyance of a strip, piece, or parcel of land to a railroad without additional language in the conveyance limiting the use of that land is generally construed as conveying a fee. *Brown,* 510 N.E.2d at 644. But, Indiana public policy does not favor the conveyance in fee simple of land that is to be used for a railroad right-of-way. *Ross, Inc.,* 199 N.E.2d at 348. In general, any reference to a right-of-way in a deed conveying real property to a railroad will cause the deed to be interpreted as conveying only an easement. *Brown,* 510 N.E.2d at 644; 65 Am.Jur.2d *Railroads* § 75. The law has endorsed the policy that a deed to a railroad conveys a right of way, that is, an easement, terminable when the railroad's use terminates, rather than a fee simple. *Brown,* 510 N.E.2d at 644. The rationale behind this policy has been expressed as follows:

Transaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased. If the railroad holds title in fee simple to a multitude of skinny strips of land now usable only by the owner of the surrounding or adjacent land, then before the strips can be put to their best use there must be expensive and time-consuming negotiation between the railroad and its neighbor— that or the gradual extinction of the railroad's interest through the operation of adverse possession. It is cleaner if the railroad's interest simply terminates upon the abandonment of railroad service. A further consideration is that railroads have eminent domain powers, and they should not be encouraged to use those powers to take more than they need of another person's property—more, that is, than a right of way.

*Penn Central Corporation v. U.S. Railroad Vest Corporation,* 955 F.2d 1158, 1160 (7th Cir. (Ind.) 1992). Also, our supreme court has stated:

Public policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes; either by deed or condemnation. This policy is based upon the fact that the alienation of such strips or belts of land from and across the primary or parent bodies of the land from which they are severed, is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of the property involved. Therefore, where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs or assigns.

*Brown,* 510 N.E.2d at 644 (citing *Ross, Inc.,* 245 Ind. at 659, 199 N.E.2d at 347–348).

■ Conrail argues that the old deeds conveyed them fee simple interests pointing out that the language employed in the deeds, "conveys and warrants," tracks the statute governing the transfer of fee simple interests in real estate in effect at the time the deeds were executed, as well as the statute in force today. 1 RS 1852, Ch. 23, § 12 (old statute); Ind.Code 32–1–2–12. Conrail points out further that the deeds in question convey the *"Land,* right of way and right of drainage." (Emphasis ours). Conrail argues "[t]he deed language 'Land, right of way and right of drainage' delineates the bundle of sticks which constitutes fee simple title, with 'right of way' and 'right of drainage' being lesser included privileges incidental to the grant of land, itself." (Conrail's brief, p. 10). Conrail

also argues that the term "right of way" as used in the deeds is consistent with fee simple ownership, citing *Joy v. City of St. Louis,* (1890), 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843, as follows:

> The term "right-of-way has a two fold signification. It is sometimes used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed.

138 U.S. at 44, 11 S.Ct. at 256. *See also,* McKinney, p. 2 n. 3 ("Right-of-way" is a term of art with at least two related meanings: it is sometimes used to mean a *right* to cross over the land of another, an easement; it is also used to mean the strip of land upon which a road or railroad is constructed.)

Under the principles of deed construction outlined above, we believe that use of the term "right of way" causes the deeds in question to convey easements only. To hold, as Conrail urges, that the "right of way" interest is merely subsumed in the conveyance of the "land" in fee simple, would render use of this key term superfluous or meaningless in the interpretation of the deed. We hold that "right-of-way" means easement regardless of whether the deed may be considered ambiguous because the term "right-of-way" can have two meanings, as discussed above. As noted earlier, where there is ambiguity as to the character of the interest or title conveyed, such ambiguity will generally be construed in favor of the original grantors. *See Brown,* 510 N.E.2d at 644.

■ Conrail argues that the advent of the Rails to Trails movement has shifted public policy such that the policy considerations militate in favor of construing the original conveyances as fee simple grants rather than easements. We must reject this argument for two reasons. First of all, we are bound by the supreme court precedent cited above. Secondly, this public policy argument raises serious questions regarding the taking of private property rights as discussed in *Fritsch v. Interstate Commerce Commission,* 59 F.3d 248 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1262, 134 L.Ed.2d 210, which affirmed the finding of reversion of·

ownership of a railroad corridor earmarked for a rails to trails program to the Indiana landowners. The *Fritsch* court held:

> Such is the case here, where [the railroad] only possessed an easement on the property belonging to private landowners. Once [the railroad] consummated abandonment, [the railroad's] property interests reverted to the landowners. These interests were thus extinguished as a matter of law. Certainly neither [the ICC regulation involved] nor the Trails Act can create a new property interest if abandonment has already occurred.

\* \* \* \* \* \*

> Because we so hold, we need not decide whether Indiana State property law would dictate that a change of use in an easement would constitute an additional taking of the property of the fee owner, nor whether such additional taking would be compensable under the Fifth Amendment to the United States Constitution.... Those questions are left for another day. Sufficient unto this day is the decision that the easement holder had abandoned its interest and the fee owners prevailed.

59 F.3d at 252–253.

Conrail has failed to meet its burden of demonstrating that the trial court's entry of partial summary judgment was erroneous. The deeds in question conveyed a mere right-of-way easement in the railroad corridor which was extinguished upon the abandonment of the line. Therefore, we find no error.

Judgment affirmed.

NAJAM, J. concurs.

SULLIVAN, J. concurs in result.