In re Zohrab K. TAZIAN and Naomi Tazian, Appellants–Defendants,

and

James A. Long, II and Mary Ann Long, Robert S. Warner and Malea A. Ramer, and Eleanor L. Doehla, Defendants (not participating in this appeal),

v.

Alice CLINE, Appellee–Plaintiff.

No. 02A03–9603–CV–80.

Court of Appeals of Indiana.

Nov. 13, 1996.

Catherine S. Christoff, Christoff & Christoff, Fort Wayne, for Appellants.

Dennis D. Sutton, Burt, Blee, Dixon & Sutton, Christopher A. Ward, Deputy Attorney General, Fort Wayne, for Appellee.

## OPINION

GARRARD, Judge.

Zohrab and Naomi Tazian appeal the trial court's grant of summary judgment in favor of Alice Cline, claiming that the trial court erred by finding that Alice Cline held the disputed property in fee simple.

## FACTS

The following facts are undisputed. On May 15, 1985, Alice Cline purchased a 4.24 acre strip of land in Allen county from United Railroad Corporation/Penn Central Corporation ("United/Penn") by quitclaim deed. This strip of land abutted the property of the Tazians and the other defendants in the proceeding before the trial court.[1] The land, formerly used as a railroad, was no longer in use by United/Penn. United/Penn was the successor in interest of the Fort Wayne, Jackson & Saginaw Railroad Company ("Fort Wayne R.R."). The Fort Wayne R.R. purchased the land from S. Cary Evans and his wife by a deed dated February 10, 1873 ("1873 deed"). It is this deed that is the sole focus of this appeal. The Tazians contend that the deed grants the Fort Wayne R.R. only an easement, while Cline argues that the deed is for a fee simple estate.

The deed states in relevant part:

This indenture made this 10th day of February AD 1873 between S. Cary Evans & wife of the first part and the Fort Wayne, Jackson & Saginaw Railroad Company [party] of the second part. Witnesseth that the said parties of the first part in consideration of five hundred dollars to them in hand paid by the party of the second part the receipt whereof is hereby acknowledged and in further consideration of the benefits anticipated from said railroad when constructed do grant and convey and warrant to the party of the second part and their successors and assigns a strip of land fifty feet in width on West side of railroad over, across, and through the following described tract of land situated in the county of Allen and State of Indiana, viz:

The South West Quarter of Section Two (2), Township thirty-one (31) North, Range Twelve (12) East, formerly owned by William ? Hawley deceased deeded by Wm. E. Hawley to S.C. Evans recorded record 55, page 438 said strip of ground to be on and along the central line of said railroad as the same shall be finally located on such tract of land and of such width on each side of said central line as the final location

of said railroad by said company shall determine. With the right also for the safety of said railroad to cut down standing timber on the outside of either outer line of said strip or any of its structures to have and to hold all and singular the said premises in and by these presents released and conveyed unto the said Fort Wayne, Jackson & Saginaw Railroad Company and their successors and assigns forever for the uses and purposes therein expressed. (R. 71)

Cline brought an action to quiet title in the disputed strip of land on February 24, 1995. The Tazians answered and filed a cross complaint to quiet title to the land abutting their property on March 28, 1995. In their cross complaint, the Tazians claimed that the 1873 deed merely granted the Fort Wayne R.R. an easement to conduct a railroad, which was extinguished when the United/Penn abandoned railroad operations. The Tazians argue that when an easement is extinguished it reverts to the original grantors, so, as successors to the Evanses, title rightfully belongs to them.

On July 29, 1995, Cline filed a motion for summary judgment on the issues of the interpretation of the deed and the quiet title claim. The Tazians responded on August 7, 1995, and filed a counter motion for summary judgment on the same issues. A hearing was held on October 13, 1995, and, on November 1, 1995, the trial court granted summary judgment in favor of Cline on the interpretation of the 1873 deed. In its order, the trial court also requested that Cline submit proposed findings of fact and conclusions of law on the deed interpretation and quiet title issues. On December 12, 1995, the trial court accepted Cline's proposed findings of fact and conclusions of law, quieting title in Cline and ruling the 1873 deed a grant of a fee simple estate. The Tazians filed their appeal on January 4, 1996.

## ISSUE

The Tazians present one issue on appeal which we restate as follows:

---

1. The Tazians are the sole defendants from the proceeding below participating in this appeal.

Whether the trial court erred by finding that the 1873 deed was a conveyance of a fee simple.

## DISCUSSION

■ When reviewing an appeal of summary judgment, "the appellate court faces the same issues, which we analyze in the same way as a trial court does." *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992). "We will affirm the granting of summary judgment on any legal basis supported by the record. Our standard of review is unchanged by the entry of findings of fact and conclusions thereon. In the summary judgment context, the entry of findings of fact and conclusions thereon aids our review by providing us with a statement of the reasons for the trial court's actions, but it has no other effect." *Chicago Southshore & S.B. R.R. v. Itel Rail,* 658 N.E.2d 624, 629 (Ind. Ct.App.1995) (citations omitted). "When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts." *O'Neal v. Throop,* 596 N.E.2d 984, 986 (Ind.Ct.App.1992), *trans. denied.*

■ To determine whether the law has been properly applied to the facts, we need only review the language of the 1873 deed between the Evanses and the Fort Wayne R.R. When reviewing a deed, "[t]he entire deed is to be regarded, and the parts thereof are to be construed together so that no part is rejected. The object of the construction is to ascertain the intent of the parties and it must be their intent that every part has some meaning, therefore, we favor a construction which reconciles the different parts, and reject the construction which leads to a contradiction." *Enderle v. Sharman,* 422 N.E.2d 686, 694–695 (Ind.Ct.App.1981). When both the language and intent of the parties are clear from the instrument itself, our only duty is to enforce the instrument as it is written. *Id.* at 695.

■ The Tazians claim that the granting clause was general or indefinite and that the trial court erred by not finding that the habendum clause of the 1873 deed limited the estate conveyed to solely an easement. Because we must view the deed as a whole and reconcile its various parts, we begin our analysis by discussing the granting clause. *Id.* The most significant words in the granting clause are "do grant and convey and warrant." (R. 71). In its conclusions of law, the trial court found that under the controlling statute[2] at that time, these words of grant indicated a grant of fee simple estate. The language "grant and convey and warrant," and the rest of the granting clause, mirrors the language of the controlling statute. Accordingly, the granting clause language conveyed a fee simple estate in the 1873 deed. We agree with the trial court's conclusion that the specific language of grant conveys a fee simple estate. The Tazians argue that, notwithstanding this language, the remaining language of the deed, specifically the habendum clause, reflects a conveyance of an easement.

■ Before addressing the habendum clause, we must not overlook other relevant language in the granting clause. The granting clause uses the phrase "strip of land" instead of "right of way" to describe the estate conveyed in the deed. (R. 71). "The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an *estate in fee,* but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement." *Brown v. Penn. Cent. Corp.,* 510 N.E.2d 641, 644 (Ind. 1987) (emphasis added). The 1873 deed unambiguously describes the property as a "strip of land." Absent a showing of additional limiting language, the use of "strip of

2. The statute reads as follows:
   Any conveyance of lands worded in substance as follows 'A.B. conveys and warrants to C.D.' [here describe the premises] 'for the sum of' [here insert the consideration,] the said conveyance being dated and duly signed, sealed, and acknowledged by the grantor, shall be deemed and held to be a conveyance in fee simple to the grantee ...
   *Burns Ind.*Stat. ANNO. Sec. 56–115 [I.R.S. 1852 ch. 23 sec. 12] (R. 22).

land" further supports the trial court's finding that the 1873 deed granted a fee simple estate to the Fort Wayne R.R.

■ The final element of discussion in the granting clause is the consideration paid to the Evanses. A sale of property for nominal consideration reflects an intent to create an easement. *Richard S. Brunt Trust v. Plantz*, 458 N.E.2d 251, 255 (Ind.Ct.App. 1983). The Fort Wayne R.R. paid five hundred dollars for the strip of land, hardly nominal consideration in 1873. In finding the conveyance to be an easement, the *Plantz* court emphasized the fact that only nominal consideration was given. It cannot be said that the five hundred dollars paid by the Fort Wayne R.R. for the 4.24 acres was nominal consideration. This lack of nominal consideration also supports the trial court's finding that the 1873 deed did not convey an easement.

■ The Tazians claim that despite the formal words of grant, the use of "strip of land," and the lack of nominal consideration, the granting clause is ambiguous and the trial court erred by failing to address the habendum clause. The Tazians are correct that "when the granting clause of a deed is general or indefinite respecting the estate in the lands conveyed, it may be defined, qualified, and controlled by the habendum." *Claridge v. Phelps*, 105 Ind.App. 344, 11 N.E.2d 503, 504 (1937). As discussed above, we find that the granting clause is not ambiguous in its grant of a fee simple estate. We will, nonetheless, discuss the habendum clause because "[t]he entire deed is to be regarded" in our analysis. *Enderle v. Sharman*, 422 N.E.2d 686, 694 (Ind.Ct.App.1981).

■ The Tazians claim that the habendum clause limits and controls the granting clause by its use of the language "for the uses and purposes therein expressed." (R. 71). Relying on this language, the Tazians claim that this deed is similar to deeds found to be conveyances of easements in several

cases they cite.[3] The Tazians analogize the language "uses and purposes therein" to the language "for railroad purposes" and "right of way" used in the cited cases. Because there is no specific use of "for railroad purposes" or "right of way," or any limitation to railroad use in the 1873 deed, this analogy is faulty. In *Plantz, Ritz,* and *Ross*, the repeated use of the phrases "right of way" and "for railroad purposes" in the habendum clause made clear that the land was meant to be used only as an easement for the operation of a railroad. As stated before, the use of the term "right of way" generally means an easement. *Brown v. Penn. Cent. Corp.*, 510 N.E.2d 641, 644 (Ind.1987). The terms "right of way" and "for railroad purposes" appear nowhere in the 1873 deed. There is no clear statement of the intention that the land be used only for railroad purposes. In fact, the only specific purpose or use mentioned in the deed is the right to remove standing timber on the edges of the property. Without specific language limiting the grant of the property to an easement for railroad purposes, we decline to interpret the habendum clause as limiting the granting clause in any way.

The habendum clause in the 1873 deed simply does not specifically limit the granting clause's conveyance of a fee simple estate. The clear language of the 1873 deed conveyed a fee simple estate to the Fort Wayne R.R. without any limitation on the uses or purposes of the land. Under *Enderle v. Sharman*, 422 N.E.2d 686, 694–695 (Ind.Ct. App.1981), we must favor the construction of this deed "which reconciles the different parts, and rejects the construction which leads to contradiction." Because the Tazians' construction of the habendum clause would lead to a contradiction of the clear terms of the deed, we find that the trial court was correct in its decision that the 1873 deed granted a fee simple estate to the Fort Wayne R.R. and, as its successor in interest, to Alice Cline as well.[4]

---

3. *Richard S. Brunt Trust v. Plantz*, 458 N.E.2d 251 (Ind.Ct.App.1983); *Ritz v. Indiana and Ohio R.R.,Inc.*, 632 N.E.2d 769 (Ind.Ct.App.1994), *reh'g denied, trans. denied; Ross v. Legler*, 245 Ind. 655, 199 N.E.2d 346 (1964).

4. Because we find the language of the deed to clearly convey a fee simple estate, we decline to consider the public policy issues raised by the Tazians.

The judgment of the trial court is affirmed in its entirety.

AFFIRMED.

RUCKER, J. concurs.

STATON, J. dissents with separate opinion.

STATON, Judge, dissenting.

I dissent. The majority "decline[s] to interpret the habendum clause as limiting the granting clause in any way." Op. at 489. Three errors lead the majority to ignore the habendum of this deed. First, the majority creates a new standard of deed construction by defining a general grant to mean an ambiguous grant. Second, the majority applies one section of the 1852 property code, without considering the rest of the code, in contravention of the intent underlying the code. Third, the majority mandates additional requirements that must be met before the intent of a grantor to create an easement will be given effect.

The initial error is to confuse a general conveyance with an ambiguous conveyance. The standard our cases set out is, as the majority correctly cites, that "when the granting clause of a deed is general or indefinite respecting the estate in lands conveyed, it may be defined, qualified, and controlled by the habendum." *Claridge v. Phelps*, 105 Ind.App. 344, 11 N.E.2d 503, 504 (1937), *trans. denied.* *Claridge* explains further:

> The premises of a deed are often expressed in general terms, admitting of various explanations in a subsequent part of the deed. Such explanations are usually found in the habendum. The office of the habendum is properly to determine what estate or interest is granted by the deed ... the habendum may lessen, enlarge, explain, or qualify, but not totally contradict or be repugnant to the estate granted in the premises.

*Id.*

The majority, however, equates a general grant with an ambiguous grant. Op. at 489. This creates an erroneous standard, as the term "general grant" is not synonymous with the descriptor "ambiguous." As used in *Claridge*, a general grant references a granting clause worded in the general "A conveys to B" form. In contrast, alternative wording, or additional qualifications and limitations, may be employed in the granting clause to convey the intended estate. The distinction between a general grant and a special or limited grant is in the form of the granting clause, not in whether the granting clause is clear or ambiguous. By changing the meaning of "general grant" to mean "ambiguous," the majority creates a new standard of deed construction. The question is no longer whether the habendum defines or qualifies the grant in an appropriate manner, that is, in a manner not wholly inconsistent or repugnant to the granting clause and deed taken as a whole. Instead, the majority transforms our currently existent standard into an inquiry of whether the granting clause, considered in isolation, is ambiguous. The skewed analysis flowing from this new standard ignores not only the habendum, but the rest of the deed as well.

The majority's second error is to miss the import of the 1852 conveyance statute. The statute reads:

> Any conveyance of lands worded in substance as follows: 'A.B. conveys and warrants to C.D.' [here describe the premises] 'for the sum of' [here insert the consideration] the said conveyance being dated and duly signed, sealed, and acknowledged by the grantor, shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns, ...

INDIANA REVISED STATUTES OF 1852, ch. 23, sec. 12. The majority concludes that the granting language in this deed is similar to the language used in the statute, so the grant should be considered a grant of a fee simple absolute, despite the habendum.

However, the 1852 code also states:

> It shall not be necessary to use the words 'heirs and assigns of the grantee,' to create in the grantee an estate of inheritance; and if it be the intention of the grantor to convey any lesser estate, it shall be so expressed in the deed.

INDIANA REVISED STATUTES OF 1852 ch. 23, sec. 14.

The purpose of the code is to simplify conveyancing in order to more easily give effect to the intention of the parties and keep conveyances from failing due to the omission of talismanic phrases. Historically conveyancing required adherence to "verbal ritualism," necessitating precise recitation of particular words in particular parts of the deed. CORNELIUS J. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY 32 (1962). "Substitute words were not effective," so a conveyance would fail due to improper use of formulaic phrases. *Id.* The 1852 code sought to sweep away some of this clutter of empty formalism. Thus the code eliminates the words of purchase "heirs and assigns of the grantee," which had been necessary to convey a fully alienable and transferable estate. *Id.* The code also allows the grantor to convey any lesser estate by expressing such an intention in the deed without requiring the use of any special words. The majority's use of one solitary statutory section, cut out from the rest of the code, to create an unrebuttable presumption as to the estate created, based on the presence of special words, is completely in opposition to the purpose of the code.

The majority's third error is reasoning that "[b]ecause there is no specific use of 'for railroad purposes' or 'right-of-way,' " a right-of-way could not have been created. Op. at 489. When examining a deed to ascertain the nature of the estate granted, the court's determination does not hinge on the presence or absence of certain special words. Rather, it is "a cardinal rule in the construction of deeds that it be made on the entire deed, and not merely upon a particular part of it; and therefore every part of the deed ought, if possible, to take effect, and every word to operate." *Ross, Inc. v. Legler,* 245 Ind. 655, 199 N.E.2d 346, 347 (1964), *reh. denied.* Any "additional language as to the use or purpose to which the land is to be put" can limit the estate conveyed. *Richard S. Brunt Trust v. Plantz,* 458 N.E.2d 251, 253 (Ind.Ct.App. 1983); *See e.g. Pointer v. Lucas,* 131 Ind. App. 10, 169 N.E.2d 196, 202 (1960) ("The use of the term 'life estate' is not necessary to create such an estate, but the intention to create a life estate may be expressed in any equivalent and appropriate language.") It is

not necessary that the exact words "right-of-way" or "for railroad purposes" appear in this deed to create an easement. The majority's reasoning raises new technical requirements as obstacles which must be overcome before substance will be given to the intent of the parties.

Analyzing the deed at issue in this appeal under the law established in precedent, without injecting a new test of ambiguity which construes the entire deed on the basis of the granting clause alone, yields a result different from that adduced by the majority. The law established in precedent is that, "[t]he primary rule in interpreting a deed is that it is to be taken as a whole, with the grantor's intention controlling. All the words in a deed must be given effect for the purpose of determining the grantor's intent." *Guido v. Baldwin,* 172 Ind.App. 445, 360 N.E.2d 842, 846 (1977) (citations omitted). "The courts in seeking to determine the intention of the grantors from an examination of a deed will give the same attention and consideration to the habendum as to any other part of the deed." *Pointer, supra,* at 203. "[W]hen the granting clause of a deed is general or indefinite respecting the estate in the lands conveyed, it may be defined, qualified, and controlled by the habendum." *Claridge, supra,* at 504.

The deed in question discusses the construction and operation of a railroad. The deed states that the benefits flowing from railroad operations forms part of the consideration for the conveyance. The deed grants the strip of land for laying train tracks and running the train "over, across, and through" the Evans' land. The deed also gives the railroad the right to maintain and keep the strip of land free from overhanging tree limbs to ensure safe operation of the train. Finally, the deed states in the habendum that the railroad is to "have and hold" that grant "for the uses and purposes therein expressed." The phrase "for the uses and purposes therein expressed" refers to the previous discussion of railroad operations within the deed, thus limiting the grant. "There is nothing in the deed to indicate that the words in the habendum limiting the estate granted in the premises were not put in

there deliberately and inserted there for a purpose not to be lightly considered or arbitrarily thrust aside." *Claridge, supra,* at 505. The language employed need not be the exact words "for railroad purposes."

The habendum, by reference to other language within the deed, limits the grant, so that the deed construed as a whole conveys a right-of-way easement to the railroad. This easement was extinguished when the railroad abandoned operations on the land. The land then reverted to the heirs and assigns of the Evans—the Tazians.

Giving effect to the language of the deed creating a right-of-way easement is also more consonant with Indiana policy. As this court explained earlier this year in *Consolidated Rail Corporation v. Lewellen,* 666 N.E.2d 958, 962 (Ind.Ct.App.1996), "[t]he law has endorsed the policy that a deed to a railroad conveys a right-of-way, that is, an easement, terminable when the railroad's use terminates, rather than a fee simple." The court also stated that "Indiana public policy does not favor the conveyance in fee simple of land that is to be used for a railroad right-of-way." *Id.* As the court explained:

The rationale behind this policy has been expressed as follows:

Transaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased. If the railroad holds title in fee simple to a multitude of skinny strips of land now usable only by the owner of the surrounding or adjacent land, then before the strips can be put to their best use there must be expensive and time-consuming negotiation between the railroad and its neighbor—that or the gradual extinction of the railroad's interest through the operation of adverse possession. It is cleaner if the railroad's interest simply terminates upon the abandonment of railroad service. A further consideration is that railroads have eminent domain powers, and they should not be encouraged to use those powers to take more than they need of another person's property—more, that is, than a right-of-way.

*Penn Central Corporation v. U.S. Railroad Vest Corporation,* 955 F.2d 1158, 1160 (7th Cir. (Ind.) 1992). Also, our supreme court has stated:

Public policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes; either by deed or condemnation. This policy is based upon the fact that the alienation of such strips or belts of land from and across the primary or parent bodies of the land from which they are severed, is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of the property involved. Therefore, where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs or assigns.

*Brown,* 510 N.E.2d at 644 (citing *Ross, Inc.,* 245 Ind. at 659, 199 N.E.2d at 347–348).

*Lewellen, supra,* at 962.

In this case the deed conveyed to the railroad an easement for the only purpose a railroad would require a strip of land: to lay tracks and operate a railroad "over, across, and through" the Evans' land. "Reference to the intended use of the land indicates that an easement was conveyed; the grantors would have no reason to specify the use if conveying a fee simple." *Brunt Trust, supra,* at 256. The language of the deed limits the estate granted the railroad to a right-of-way easement. When the railroad abandoned that easement, their easement was extinguished and the land reverted to the Tazians as assigns of the Evans.